AMERADA PETROLEUM CORPORA-TION, Appellant,

v.

Bettye M. MARSHALL, Appellee.

No. 24019.

United States Court of Appeals
Fifth Circuit.

July 31, 1967.

---

James A. Pakenham, Joyce Cox, Houston, Tex., Cecil E. Munn, Fort Worth, Tex., Joseph W. Morris, Tulsa, Okl., for appellant.

Albert I. Edelman, New York City, William H. White, Houston, Tex., for appellee.

Before HUTCHESON, GOLDBERG and DYER, Circuit Judges.

HUTCHESON, Circuit Judge:

This appeal is from an order of the district court refusing to hear a petition for declaratory judgment. We affirm.

In 1948 appellant Amerada Petroleum Corporation, Continental Oil Company, and Marathon Oil Company agreed to organize jointly Coronada Petroleum Corporation whose purpose would be to acquire oil properties outside the United States. One Arthur A. Curtice was employed as the president of Coronada and he received as compensation a participating interest in properties acquired by Coronada during his employment. Curtice assigned to appellee Bettye Marshall 10% of his participating interest as compensation for her job as his executive assistant. Coronada later acquired some oil properties in Libya. The instant case is part of the litigation which ensued when in September 1963 Mrs. Marshall informed Amerada, Continental, and Marathon of her intention to assert a claim to an interest in the Libyan production.

In 1964 Mrs. Marshall instituted suit in the United States District Court for the District of Columbia against Continental and Marathon, both doing business in that jurisdiction. Amerada, not amenable to service in the District of Columbia, could not be joined as party defendant in that action. Both Continental and Marathon moved to transfer the case to New York on the ground that it was a more convenient forum. The motion was denied.

Thereafter, on March 8, 1966, counsel for Mrs. Marshall wrote a letter to Amerada inviting it to appear voluntarily in the District of Columbia to the end that the litigation might be unified; Amerada was advised that if it chose not to appear, Mrs. Marshall would bring suit against it in a jurisdiction where it was subject to service. Approximately three weeks later Amerada filed the instant action for declaratory judgment in the Southern District of Texas. About 40 days later, Mrs. Marshall commenced suit against Amerada in the United States District Court for the Southern District of New York.

In response to the petition filed in the court below, Mrs. Marshall moved (a) to dismiss, (b) to transfer to the District

of Columbia or the Southern District of New York, or (c) to stay the declaratory judgment action pending the outcome of the suit she had filed in New York. The first two motions were denied, but the motion to stay was granted.

The district judge noted that the sole issue before him was whether he should hear the petition and declare the rights of the parties. The judge felt that the essential question that he was called upon to decide was whether the proper forum for the litigation between the parties was the Southern District of Texas or the Southern District of New York. In deciding that the latter is the proper forum, he emphasized his conclusion that the filing of the declaratory judgment action in the court below was triggered by the letter stating that Amerada would be sued by Mrs. Marshall if it did not appear in the District of Columbia as party defendant along with Continental and Marathon. Thus he did not regard as controlling the fact that the instant action was filed by Amerada shortly before Mrs. Marshall filed her suit in New York. See Shell Oil v. Frusetta, 290 F.2d 689, 692 (9th Cir. 1961). Furthermore, New York was considered the more convenient forum on the grounds that it was the site of the execution of the contract, the work performed under the contract, and Coronade's principal place of business. On the other hand, the judge was of the view that the Southern District of Texas has no connection with the controversy other than as the residence of Mrs. Marshall, who is willing to make herself available for deposition and discovery in New York.

This is the type of case of which the Supreme Court has said:

"The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, *does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.*" Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183–184, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1951). (emphasis added).

The district court clearly was vested with discretion in deciding whether to hear the declaratory judgment suit which involves the same parties and issues as Mrs. Marshall's action filed in a court of coordinate jurisdiction.[1] There is sufficient evidence to support the judge's finding that the instant action was filed by Amerada as the immediate result of the letter inviting it to appear in the District of Columbia. Amerada has been aware of Mrs. Marshall's claim since September 1963, yet it apparently did not feel compelled to seek a determination of its rights for over two years. That Amerada's petition for declaratory judgment apparently was in anticipation of the New York suit is an equitable consideration which the district court was entitled to take into account. Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937); Seaboard Sur. Co. v. Texas City Ref., Inc., 109 F.Supp. 468 (D.Del.1952). Compare Crosley Corp. v. Westinghouse Elec. & Mfg. Co., 130 F.2d 474 (3d Cir.) cert. denied, 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942).

Moreover, Amerada is not in the position of one who cannot obtain an adjudication of its legal rights; the only question here is in which of two jurisdictions should the adjudication take place. We cannot say that the judge

---

1. "The Declaratory Judgment Act was an authorization, not a command. It gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so." Public Affairs Associates, Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 582, 7 L.Ed.2d 604 (1962). Accord Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

acted outside the limits of his discretion in considering the factors which favor New York as the proper forum.

For the reasons given by the district judge, we affirm.

In view of this disposition of the cause, Mrs. Marshall's motion to dismiss is denied.

Affirmed.