**MONTGOMERY ELEVATOR COMPANY,
Plaintiff-Appellant,**

v.

**BUILDING ENGINEERING SERVICES CO., INC., et al.,
Defendants-Appellees.**

**No. 82–3704.**

United States Court of Appeals,
Fifth Circuit.

April 23, 1984.

L. Kevin Coleman, New Orleans, La., for plaintiff-appellant.

Deutsch, Kerrigan & Stiles, Robert E. Kerrigan, Jr., New Orleans, La., for defendants-appellees.

Before POLITZ, JOHNSON and WILLIAMS, Circuit Judges.

JOHNSON, Circuit Judge.

In 1976, Building Engineering Services Co., Inc., ("BESCO") hired the Montgomery Elevator Company ("Montgomery") to service and maintain the elevators and escalators in the Louisiana Superdome in New Orleans, Louisiana. Shortly thereafter, a young visitor to the Superdome was injured while using the escalator and a personal injury action was brought against BESCO and Montgomery. Montgomery and BESCO both prevailed in the personal injury action, but upon the conclusion of the personal injury action, Montgomery commenced this diversity action against BESCO contending that BESCO breached its contractual duty to name Montgomery as an additional insured under BESCO's insurance policy. As damages, Montgomery sought to recover the attorney's fees that it incurred in defending the personal injury action. The district court rendered judgment for BESCO and Montgomery appealed. We affirm.

I. FACTS AND COURSE OF PROCEEDINGS

In April 1976, Montgomery entered into a contract with BESCO under which Montgomery was to service and maintain the elevators and escalators in the Louisiana Superdome. The contract contained two clauses that are of interest here, an insurance clause and an indemnity clause.

The insurance clause required BESCO to maintain comprehensive liability insurance and to name Montgomery as an additional insured on the policy. The insurance clause recited:

> You [BESCO] shall at all times and at your own cost, maintain comprehensive bodily injury and property damage insurance (naming Montgomery Elevator Company as an additional insured), including bodily injury and property damage caused by the ownership, use or operation of the equipment described herein.

BESCO did obtain insurance, but the insurance obtained did not name Montgomery as an additional insured.

The indemnity clause of the contract required BESCO to indemnify Montgomery against all claims of liability asserted against Montgomery arising from the operation of the equipment, except, of course, those directly attributed to Montgomery's negligence. The indemnity clause recited:

> Nothing in this Agreement shall be construed to mean that Montgomery Elevator Company, or its subsidiaries, officers, directors, agents or employees ... assume any liability for damages or otherwise on account of accidents to persons or property ... except those directly due to the negligence of Montgomery Elevator Company. You [BESCO] shall be solely responsible for supervising the use of the equipment, and you shall provide whatever attendant personnel, warning signs and other controls and cautions that may be required or desirable to insure safe operation. You shall at all times be solely liable for the operation of the equipment and you shall indemnify, protect and save harmless Montgomery Elevator Company and its affiliates from and against liabilities, losses and claims of any kind or nature imposed on, in-

curred by, or asserted against Montgomery Elevator Company or its affiliates arising out of the operation of the equipment.

In August 1976, sixteen year-old Zelta Huinker sustained injuries when the hem of her formal gown became enmeshed in a moving escalator. Huinker brought a personal injury suit against Montgomery, BESCO, and others. At all times, Montgomery took its own defense. At no time did Montgomery cross-claim against BESCO, or otherwise call to BESCO's attention that the contract would require BESCO to defend Montgomery's interest in the litigation. At trial, the trial judge directed a verdict in favor of BESCO, and the jury returned a verdict in favor of Montgomery and the remaining defendants.

After final judgment was rendered in favor of all defendants in Huinker's personal injury suit, Montgomery commenced this diversity action in federal district court. Montgomery's complaint alleged simply that BESCO had breached its contractual duty to procure insurance for the benefit of Montgomery, and that BESCO was therefore liable to Montgomery for nearly $29,000 in attorney's fees and costs. The parties submitted the case for judgment on the basis of documentary evidence and memoranda. The district court initially ruled in favor of Montgomery, and BESCO moved for a new trial.

On reconsideration, the district court entered judgment in favor of BESCO. The court initially noted that BESCO committed a "passive breach" of contract by failing to name Montgomery as an "additional insured." Applying Louisiana contract law, the court determined that Montgomery's failure to put BESCO in default extinguished its right to seek damages from BESCO. The court reasoned that, had Montgomery put BESCO in default when the breach occurred, BESCO may have been able to take some action to avoid the duplicative litigation costs that did in fact arise. The opinion concluded:

> After careful reconsideration, the Court now determines that it was ill advised to find that, under the circumstances described above, it would have been futile and useless to put BESCO in default. The Court recognizes, of course, that it would have been impossible for BESCO to have named Montgomery as an additional insured at such a late hour. Who is to say, however, what actions BESCO would have taken if it had been put in default? To make such a determination at this time would be to engage in dangerous speculation. The Court is in agreement with BESCO's position that a contrary finding might very well advance a policy which encourages duplicative litigation and costs.

This appeal followed.

## II. WAS MONTGOMERY'S CLAIM A COMPULSORY COUNTERCLAIM?

This threshold question was raised during the hearing on BESCO's motion for new trial and is hinted at in the trial court's opinion: is Montgomery's claim one which must have been asserted as a compulsory counterclaim in the Huinker suit? *See,* Fed.R.Civ.P. 13(a). If so, the present claim for attorney's fees was waived by Montgomery's failure to assert it during the Huinker litigation, and it may not be pursued now.

█ Rule 13(a) requires that any claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" is a compulsory claim and must be asserted, or it will be deemed waived. Fed.R.Civ.P. 13(a). This circuit has adopted the "logical relationship" test to determine if a claim is sufficiently related to the primary claim so as to be compulsory. *United States v. Aronson,* 617 F.2d 119, 121 (5th Cir.1980). A logical relationship exists when "the same operative facts serve as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Plant v. Blazer Financial Services, Inc.,* 598 F.2d 1357, 1361 (5th Cir.1979).

█ The Huinker suit involved personal injury and liability therefor; it was not

concerned with any subsequent shifting of the burden of satisfying the judgment from one defendant to another or with the terms of the agreement under which the burden was to be apportioned. Resolution of Montgomery's claim here depends only upon interpretation of the terms of its contract with BESCO and is concerned only peripherally with the existence and causes of liability for personal injury. The same operative facts were not the bases of both claims. It therefore does not appear that Montgomery's claim was compulsory in the Huinker case, and it is not, for that reason, barred here.

## III. THE INTENT AND PURPOSE OF THE PERTINENT CLAUSES.

In interpreting the terms of this Louisiana contract, this Court is "bound to give legal effect to all such contracts according to the true intent of the parties. LSA–C.C. art. 1945." *Louisiana National Leasing Corp. v. ADF Service, Inc.*, 377 So.2d 92, 95 (La.1979). The determination of the true intent of the parties is to be made in accordance with the plain, ordinary and popular sense of the language used in the contract. LSA–C.C. arts. 1945, 1946. *See also Texaco, Inc. v. Vermillion Parish School Board*, 244 La. 408, 152 So.2d 541, 548 (1963). We consider it unlikely that both the insurance clause and the indemnity clause would have been included if both had the same intent and purpose. Accordingly, we begin with the assumption that the insurance clause demanded duties of BESCO, which were not the same as the duties demanded of BESCO by the indemnity clause.

The language of the insurance clause requires BESCO to maintain comprehensive liability coverage for bodily injury and property damage and to include Montgomery as an additional insured, thereby affording to Montgomery the same comprehensive insurance against tort claims as that afforded to BESCO. One of the benefits of such insurance to those insured thereunder is that the insurer is obligated to assume the costs of any litigation that might arise from claims for personal injury or property damage. It therefore appears that the insurance clause was intended to provide Montgomery with the same comprehensive insurance protection as that obtained by BESCO, including assumption by the insurer of the defense of claims against an insured. (R. 1:89)

Even comprehensive insurance does not provide coverage in all circumstances; most comprehensive policies do not cover intentional torts or various other exceptions. The indemnity clause in the instant contract appears to be intended to protect Montgomery from liability for injuries arising from the operation of the equipment which were not covered by the comprehensive policy, save injuries which resulted directly from negligent acts by Montgomery or its agents. Should Montgomery be found liable for injuries which arose from the operation of the equipment and which were not covered by the comprehensive policy, yet the injuries were not directly caused by Montgomery's negligence, BESCO has contractually undertaken to indemnify Montgomery for its losses. In addition, the indemnity clause specifically assigned to BESCO the supervision of the use of the equipment, the posting of appropriate warning signs, and the sole liability for the operation of the equipment.

## IV. THE DUTY OF BESCO'S INSURER TO DEFEND MONTGOMERY IN THE PREVIOUS SUIT.

As the district court correctly noted, BESCO's failure to include Montgomery as an additional insured, as was required by the contract, does not of itself impose liability. It must be shown that, had BESCO fulfilled the terms of the insurance clause, BESCO's insurer would have been obligated to defend Montgomery in the Huinker suit. Unless the insurer would have been so obligated, Montgomery suffered no harm from the breach, as it would have had to pay its own attorney's fees whether or not it was insured under BESCO's policy.

Louisiana follows the general rule that the insurer's duty to defend an insured is broader than its duty to pay a judgment

against its insured. *Williamson v. Alewine*, 417 So.2d 64, 66 (La.App.1982). The insurer's duty to defend is determined solely from the face of the complaint. "An insurer's duty to defend suits brought against its insured is determined by allegations of the plaintiff's petition, with the insurer being obligated to provide a defense unless the petition unambiguously excludes coverage." *Williamson* at 66 (quoting *Lees v. Smith*, 363 So.2d 974, 979 (La.App.1978)). *See also American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253 (1969).

> Thus, if, assuming all the allegations of the petition to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. Additionally, the allegations of the petition are liberally interpreted in determining whether they set forth grounds which bring the claims within the scope of the insurer's duty to defend the suit brought against its insured.

*Applewhite v. Baton Rouge*, 380 So.2d 119, 122 (La.App.1979) (quoting *Czarniecki, supra*, 230 So.2d at 259). The Huinkers' complaint alleged the following as to Montgomery:

> (1) Failing to properly design the escalator in question in order to prevent the clothing of a child from being ingested into the moving stairways;
>
> (2) Constructing and installing the escalator in question in a defective and unworkmanlike manner, and utilizing defective and structurally unsound parts and material in the manufacture and installation of the stairway;
>
> (3) Failing to adequately warn users of the escalator of the inherent dangers involved; and,
>
> (4) Failing to properly maintain and adjust the escalator in question.

Design, manufacture, construction, and installation do not fall within the "ownership, use or operation" requirements of the insurance clause; thus, BESCO's insurer would not have had to defend Montgomery if those had been the only allegations against Montgomery. The Huinker petition, however, also alleged inadequate warning to users of the escalators. The duty to warn users was expressly assigned to BESCO and is a duty which arises from the use or operation of the equipment. The allegation of inadequate warning to users thus stated a claim that fell within the contractually required coverage of BESCO's liability insurance. As the district court noted, "once a complaint states one claim within the policy's coverage, the insurer has a duty to accept defense of the entire lawsuit, even though other claims in the complaint fall outside of the policy's coverage. *American Automobile Association v. Globe Indemnity Co.*, 362 So.2d 1206, [1209] (La.App.1978)." *See also Cute'-Togs v. Louisiana Health Service & Indemnity Company*, 376 So.2d 999, 1000 (La.App.1979). The Huinker complaint alleged at least one claim that fell within the policy's coverage, and BESCO's insurer would, therefore, have been obligated to defend Montgomery, had Montgomery been named on the policy.

## V. MONTGOMERY'S FAILURE TO PUT BESCO IN DEFAULT.

■ Louisiana recognizes two kinds of breach, active and passive. LSA–C.C. art. 1931. An act inconsistent with the actor's obligations requires no putting in default; the breach is active and is sufficient of itself to create a cause of action for breach. LSA–C.C. art. 1932. If, however, the breach is a failure to act, or to act at the time or in the manner required, the breach is passive, and putting the breaching party in default is generally required before the wronged party is entitled to recover damages. LSA–C.C. art. 1933. Article 1911 of the Louisiana Civil Code sets forth the means which may be used to put a breaching party in default, when such action is required. In a case such as this, the wronged party may put the breaching party in default

> When at or after the time stipulated for the performance, he demands that it shall be carried into effect, which de-

mand may be made, either by the commencement of a suit, by a demand in writing, by a protest made by a notary public, or by a verbal requisition made in the presence of two witnesses.

LSA–C.C. art. 1911(2).

Both of the parties to this litigation agree that BESCO's failure to include Montgomery as an additional insured on BESCO's liability policy was a passive breach. The parties also agree that Montgomery did not put BESCO in default by written demand, tender of its defense to BESCO or BESCO's insurer, or by cross-claim during the Huinker suit. There is some indication in the record that a verbal demand was made on BESCO by Montgomery during the trial of the Huinker suit, but the demand apparently did not fulfill the requirement of LSA–C.C. art. 1911 that such verbal demands be made in the presence of two witnesses. We conclude that Montgomery did not put BESCO in default.

BESCO asserts that, under Louisiana law, Montgomery's failure to put BESCO in default bars recovery of the asserted damages. In some circumstances, however, Louisiana law allows a wronged party to recover damages for a passive breach without first having put the breaching party in default. Louisiana has created several express exceptions to the requirement of putting in default after a passive breach, and one of those exceptions may be applicable to the claim presented here. If the thing which was to be done "could be . . . done within a certain time, now elapsed, or under certain circumstances, which no longer exist" the wronged party need not put the breaching party in default. LSA–C.C. art. 1933(1). Under such circumstances, putting the breaching party in default cannot induce performance and so is a "vain and useless act." If putting in default would be vain and useless, it need not be done. *Sollay v. Sollay Foundation & Drilling, Inc.*, 389 So.2d 834, 839 (La.App. 1980).

If BESCO were to include Montgomery on the liability policy, BESCO had to do so before liability arose and before a claim was filed. Whether BESCO's failure to include Montgomery as an additional insured is called failure to act within a certain time, now elapsed, or under certain circumstances, which no longer exist, the failure to include Montgomery as an additional insured could not be corrected by putting BESCO in default after the Huinker suit was filed. We are not prepared to say, however, that BESCO could then have taken no action which would have made Montgomery whole. BESCO could not have defended Montgomery itself, for the conflict of interest between two defendants in a suit alleging negligence of one or the other is self-evident, but BESCO might have provided and paid for independent counsel for Montgomery. There may be other actions which BESCO could have taken, and we do not wish to engage in the dangerous speculation that any action by BESCO would have been inadequate to compensate Montgomery for BESCO's breach. We cannot say that putting BESCO in default would have been a vain and useless act.

BESCO's failure to include Montgomery as an additional insured was a passive breach; Louisiana law thus requires that the injured party put the breaching party in default unless a statutory exception is applicable. No exception to the general rule having been shown, Montgomery's present claim is barred by its own failure to put BESCO in default.

The judgment of the district court is AFFIRMED.