## MERLE NORMAN COSMETICS

v.

**Robert MARTIN, Jeannette Martin and Martin's Cosmetics and Gifts, Inc.**

**Civ. A. No. 88–1906.**

United States District Court, E.D. Louisiana.

Dec. 6, 1988.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, D. Michael Dendy, New Orleans, La., for Merle Norman Cosmetics.

Middleberg, Riddle & Gianna, Brian P. Charboneau, New Orleans, La., Cooper, Sanborn & Brown, Paul Mirabile, George Williams, Jr., Pasadena, Cal., for Robert Martin, Jeannette Martin and Martin's Cosmetics & Gifts, Inc.

ARCENEAUX, District Judge.

Currently before the Court are the separate motions of the defendants Robert and Jeannette Martin ("Martins"), residents of Louisiana, and Martin's Cosmetics and Gifts, Inc. ("MC & G"), a corporation incorporated, headquartered and with its principal place of business in Louisiana, to transfer this case (hereafter sometimes "the Louisiana suit") to the United States

District Court for the Central District of California. These motions are only two of a host of motions spawned by a dispute between plaintiff and defendants that arises from a manufacturer-independent retail outlet relationship gone awry.

## FACTS AND PROCEDURAL POSTURE

On May 5, 1988, Merle Norman Cosmetics, Inc. ("Merle Norman"), a manufacturer and distributor of women's cosmetics that is incorporated, headquartered and has its principal place of business in California, filed a complaint with this Court against the Martins and MC & G. The complaint alleged that defendants were indebted to Merle Norman for more than $400,000.00 for goods shipped by Merle Norman to defendants on credit for which no payment had been received. On June 27, 1988, MC & G filed a complaint against Merle Norman, Jack Nethercutt and Arthur O. Armstrong, chairman and secretary respectively of Merle Norman, in the Central District of California, alleging facts related to the factual bases of the Louisiana suit and asserting that Merle Norman violated provisions of the Sherman and Clayton Acts (15 U.S.C. §§ 1, 2, 14, 15 and 26), The Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1962), the State of Louisiana antitrust laws (La.Rev. Stat. 51:121 et seq.) and the Louisiana Unfair Trade Practices and Consumer Protection Laws (La.Rev.Stat. 51:1404 et seq.). Plaintiff also alleged state law claims of breach of contract and interference with business relations. (*See,* Martin's Cosmetics & Gifts, Inc., a Louisiana Corporation, Plaintiff vs. Merle Norman Cosmetics, Inc., a California Corporation, Jack Nethercutt, an Individual and Arthur O. Armstrong, an Individual, Defendants, Central District of California, No. 88–3688.)

On August 19, 1988, the Martins moved this Court to enter summary judgment in their favor in the Louisiana suit (Doc. 9) and MC & G filed one of the motions the Court addresses today to transfer the Louisiana suit to the Central District of California (Doc. 10). Merle Norman opposed both these motions (Docs. 14 and 13 respectively). On August 23, 1988, Merle Norman countered with a motion for a preliminary injunction, requesting this Court to enjoin prosecution of the California action (Doc. 11). The Martins and MC & G opposed the injunction request (Doc. 15). On September 6, 1988 the Martins filed their motion to transfer the Louisiana suit to the Central District of California (Doc. 16). Merle Norman opposed it (Doc. 23). On November 4, 1988, Merle Norman moved for a preliminary injunction to prohibit the Martins and MC & G from allegedly infringing certain Merle Norman trade and service marks and from allegedly engaging in practices prohibited by state law. The Martins and MC & G responded November 10, 1988 by moving the Court to continue the hearing date of plaintiff's latest motion for preliminary injunction and to quash a deposition and subpoena duces tecum and/or for protective order.

## SUMMARY

Because this action could have been brought in the Central District of California and all the issues arising from the deterioration of the relationship between plaintiff and defendants can be resolved most conveniently and expeditiously in that forum, the motions of the Martins and MC & G to transfer this case to the Central District of California are GRANTED. Accordingly, Merle Norman's motion for a preliminary injunction to enjoin prosecution of the California suit is DISMISSED as MOOT. Merle Norman's motion for a preliminary injunction to restrain defendants from selling Merle Norman products and the Martins' motion for summary judgment are carried with the transferred suit to the Central District of California for such disposition there as that trial court may deem appropriate. Because the hearing date on Merle Norman's second preliminary injunction motion is upset by the transfer of this case, the motion by the Martins and MC & G to continue hearing date of plaintiff's preliminary injunction motion and to quash a deposition and subpoena duces tecum and/or protective order is DISMISSED as MOOT.

ANALYSIS

While the essential issue presented is whether the Louisiana suit should be transferred to California for trial, its resolution turns on more than a perfunctory *forum non conveniens* analysis under 28 U.S.C. 1404(a) and a mechanical application of the factors set forth in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), for, as observed earlier, movers have previously filed suit which is presently pending in California. Thus, both the Martins and MC & G, on the one hand, and Merle Norman, on the other, are plaintiffs, although in separate suits. Accordingly, the Court's initial analysis should be undertaken in the context of the "first filed" rule, *West Gulf Maritime Association v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir.1985), which is invoked by Merle Norman in its opposition to transfer.

### A. The "First Filed" Rule

The first filed rule provides that "a district court may dismiss an action where the issues presented can be resolved in an earlier-filed action pending in another district court." *West Gulf*, 751 F.2d at 729. It is a principle of comity between federal district courts to avoid conflict with each other's purview. It is designed to prevent inconsistent rulings between courts of coordinate jurisdiction and equal power, wasteful duplicative litigation and piecemeal resolution of disputes that require uniform results. *West Gulf*, 751 F.2d at 731; *Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir.1971); *See, Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). In conjunction with the rule that the plaintiff's choice of forum is to be given considerable weight in determining the venue of an action, the first filed rule requires the defendant show special circumstances in order to overcome the plaintiff's choice of forum. *West Gulf*, 751 F.2d at 731.

Movers argue that the first filed rule should not be followed in this case because the federal antitrust law defenses asserted in this suit are virtually identical to the

antitrust law claims in the California suit; prosecution of these claims would be gravely impeded, if not irreparably harmed, should defendants be required to litigate in Louisiana. They say that substantially all books, records and indispensable witnesses to these claims are located in California and that many of these witnesses are probably unavailable for service of process in Louisiana. For these reasons, movers argue, the issues involved in this case would be resolved in a piecemeal way and they would be placed at a severe and unfair disadvantage from being unable to use effectively either an antitrust defense in the Louisiana action or pursue an antitrust remedy in the California suit. We address these contentions in turn.

The Fifth Circuit Court of Appeals, as well as other federal circuits, *See, Azuma N.V. v. Sinks*, 646 F.Supp. 122, 126 (S.D.N.Y.1986), has recognized special circumstances that will obviate the first filed rule. *The Amerada Petroleum Corp. v. Bettye M. Marshall*, 381 F.2d 661 (5th Cir.1967) court held that a complaint filed in anticipation of a subsequent suit brought by the defendant to the first action can avoid the operation of the first filed rule. *Id.* at 663. In that case, Marshall, a shareholder in Amerada Petroleum Corp. ("Amerada"), Continental Oil Co. ("Continental") and Marathon Oil Co. ("Marathon") filed suit in the United States District Court for the District of Columbia against Continental and Marathon, claiming rights to foreign mineral interests owned by a separate company that, in turn, was jointly owned by the three. Because Amerada was not amenable to service of process in the District Columbia and so could not be joined as a party defendant to that action, Marshall wrote a letter to Amerada, inviting it to appear voluntarily in the District of Columbia litigation. The letter also stated that should Amerada not join the pending suit, Marshall would bring suit against Amerada where it could be served. About three weeks later, Amerada brought an action for declaratory judgment in the Southern District of Texas. Marshall then filed suit against Amerada in the Southern District of New York and moved the Texas court to

either dismiss that suit or transfer it to the District of Columbia or to the Southern District of New York.

The Court of Appeals affirmed the Texas court's transfer of the Texas suit to the Southern District of New York even though Amerada had filed its suit first. The Court noted that the District Court appropriately found that Amerada knew of Marshall's potential claim for at least two years before it received Marshall's letter and that this letter triggered Amerada's Texas litigation. It also held that this factor was a proper one for the district court to consider in deciding the venue question before it. *Id.* at 663.

The court in *Columbia Pictures Industries, Inc. v. Schneider*, 435 F.Supp. 742 (S.D.N.Y.1977) denied plaintiff's motion to enjoin a damages action in the Central District of California and granted defendants' motion to stay the New York declaratory judgment action pending the outcome of the California case even though the New York suit was filed first. The litigations arose out of a series of business dealings between plaintiff Columbia and defendants. Defendants, believing that plaintiffs were violating contractual agreements between them as well as provisions of the federal antitrust laws and a state conspiracy to defraud law, prepared a complaint setting forth these allegation and sent a copy to Columbia's Chairman of the Board with a letter inviting the Chairman to investigate the claims and begin negotiations with the defendants. *Id.* at 745. After almost two months of negotiations, Columbia filed the New York complaint and defendants instituted the California suit six days later.

The New York court departed from the first filed rule largely because to do otherwise would penalize the defendants for making a good faith effort to settle their differences with Columbia by notifying them of the defendants' complaint before filing it. "Potential plaintiffs should be encouraged to attempt settlement discussions (in good faith and with dispatch) prior to filing lawsuits without fear that the defendant will be permitted to take advantage of the opportunity to institute litigation in a district of its own choosing before plaintiff files an already drafted complaint." *Id.* at 747–48.

The Court also noted that judicial economy argued in favor of the transfer since the Central District of California had personal jurisdiction over all the necessary parties to the New York litigation and there was a substantial question as to whether the New York Long Arm statute would permit assertion of the New York court's power over all the defendants to that action. Avoiding protracted litigation over this issue was desirable when there was an alternative forum where these questions were not raised. *Id.* A short period of time, six days, separated the filing of the two suits and because no discovery or other pre-trial proceedings had begun in either suit, requiring resolution of the dispute in California would not cause judicial inefficiency.

Finally, the Court noted that defendants' California action asserted federal antitrust law violations. This consideration should weigh in a court's venue decision since Congress expressed an intention in the antitrust statutes that antitrust plaintiffs should have a broader choice of venue than is normal in our jurisprudence.[1] While this argument did not compel the Court to stay the New York litigation, it invited careful consideration of the defendants' arguments to stay the New York action. *Id.* at 748.

While *Columbia Pictures*, a decision of a court of coordinate jurisdiction in another circuit, is not binding upon this Court, the similarity of its facts to those of this case

---

**1.** *Compare,* 15 U.S.C. § 15 (Clayton Act venue section providing "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court ... in which the defendant resides or is found or has an agent, without respect to the amount in controversy ...") and 15 U.S.C. § 22 (antitrust venue statute providing for suit against corporate defendants with same substantive breadth of venue as Section 15) *with* 28 U.S.C. § 1391 (general venue statute for federal court restricting venue to judicial districts where, broadly, parties to the suit reside or are incorporated or are licensed to do business or in which the claim arose.)

compels close attention to its analysis, especially in light of *Amerada*, 381 F.2d at 661, in which this Circuit has authorized departure from the first filed rule. This case is one of those occasions where the totality of the circumstances demands such a departure.

■ As in *Columbia*, settlement discussions were ongoing between defendants and Merle Norman. Jeannette Martin received a letter, dated March 1, 1988 from Arthur Armstrong, chairman of Merle Norman, to Jeannette Martin (Doc. 15, Exhibit "A") saying, among other things, that he was aware "from the grapevine" that the Martins' attorney had recommended contact to begin resolving their differences. Although the depositions of the principals disagree as to the exact content of the conversation, *Compare*, Doc. 15, Exh. A (affidavit of Michael Brown, defendants' attorney) *with* Doc. 23 (affidavit of Arthur Armstrong), common ground is that in late April, Brown contacted Armstrong to communicate his clients' position in the matter. While defendants here did not present the plaintiffs with a completed complaint as the *Columbia Pictures* defendants did, Merle Norman could easily gather that the defendants, by having retained an attorney and authorized him to contact Merle Norman, were seriously considering litigation.

Merle Norman has asserted that it doubts defendants' willingness to engage in good faith settlement discussions and so had no choice but to file suit to recover the alleged debt. It is difficult at best, however, to assess defendants' interest in settlement when the Louisiana suit was filed so quickly—five days—after a potentially fruitful path was opened.

Relaxing the application of the first filed rule is especially important in this case given the nature of defendants' defenses. The activity forming the basis for its antitrust defense is virtually identical to that underlying antitrust claims asserted in their California action. As *Columbia Pictures* noted, courts should give effect to the venue provisions of that statute that are broader than the venue statute for general actions in federal court provide. *Columbia Pictures*, 435 F.Supp. at 438.

More importantly in this case, however, is the nature of proof required for this particular claim. Defendants contend that many witnesses they believe will be indispensable to their antitrust defense will be beyond the subpeona power of this Court, but not that of the California court. (Doc. 16) If true, both actions would have to go forward if they remain in their present posture, resulting not only in piecemeal resolution of the differences between Merle Norman and defendants, but also litigating twice essentially the same claims arising out of the same series of transactions between the same parties. This is a paradigmatic situation for authorizing transfer under 28 U.S.C. § 1404(a), notwithstanding the first filed rule.

Merle Norman argues that defendants do not adequately identify those witnesses, beyond the Merle Norman officers named in the California suit, who are indispensable to their antitrust claims and beyond the subpeona power of this Court. It is clear that Merle Norman officers do not impede consolidation in Louisiana because they have consented to service of process in Louisiana (Doc. 13, affidavits of Arthur O. Armstrong and Jack B. Nethercutt). Defendant's complaint in the California action adequately indicates, however, the difficulties in proceeding in the Eastern District of Louisiana.

On pages 14 and 21 through 25, defendants claim that plaintiffs committed a number of federal antitrust law violations in order to keep defendants from selling products made by another cosmetics manufacturer/distributor, Retail Cosmetic Concepts ("RCC"). Evidence supporting or rebutting these antitrust claims will have to be gathered from testimony from RCC principals and other Merle Norman franchisees and from the records of these businesses, all located in California and with no contact with the State of Louisiana and so beyond the power of this Court to compel appearance in this suit. *See*, Louisiana Code of Civil Procedure, Arts. 1352, 1354 (1988). This evidence will be necessary whether

the claims are asserted offensively or defensively. Litigating these claims with this handicap would be unduly burdensome to the defendants and unnecessarily awkward for this Court, especially when there is a forum with jurisdiction and venue to hear the claims that would not labor under these difficulties. *See, Columbia Pictures,* 435 F.Supp. at 747–48.

It is true that Merle Norman's attorney is located in Louisiana and transferring this cause of action to the Central District of California may cause Merle Norman some inconvenience to an extent it might not otherwise face by forcing it to litigate in a foreign forum not of its choosing. Merle Norman faces this difficulty now, however, as defendant to the California suit. In addition, even if the Louisiana action were not transferred, Merle Norman's counsel would likely have to spend a significant amount of time in California since his client and many documents and witnesses indispensable to resolution of this case are located there. Finally, the Court finds that given the evidentiary peculiarities of defendant's antitrust claims, any inconvenience to Merle Norman through the necessity of its counsel's traveling is far outweighed by the administrative difficulties of hearing these claims in Louisiana.

■ Merle Norman also opposes transfer on the grounds that plaintiff's antitrust claims are compulsory counterclaims that Federal Rule of Civil Procedure 13(a) ("Rule 13(a)") requires be asserted in the original action or be waived. *Montgomery Elevator Co. v. Building Engineering Services Co.,* 730 F.2d 377, 380 (5th Cir. 1984). Counterclaims are considered compulsory for this rule's purposes when a logical relationship exists between "the same operative facts serv(ing) as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant, in the defendants." *Id., quoting Plant v. Blazer Financial Services,* 598 F.2d 1357, 1361 (5th Cir.1979).

One of the requirements, written into the rule itself, for subjecting claims to Rule 13(a) is that the counterclaim "... does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." As noted above, RCC, franchisees and other potential parties necessary to prove the antitrust violations are likely beyond the subpeona power of this Court. Further, there is strong likelihood that at least some of the potential parties are beyond the power of this Court to acquire jurisdiction over them. Holding defendants' antitrust claims to be compulsory in the Louisiana suit could well prejudice their abilities to assert or to effectively prove these allegations. Rule 13(a)'s purpose of preventing unnecessary multiplicity of litigation, *Audubon Life Ins. Co. v. Federal Trade Commission,* 543 F.Supp. 1362 (M.D.La.1982), cannot be applied to cause this result. Accordingly, this Court holds that Rule 13(a) does not require that defendants assert their antitrust allegations as counterclaims to the Louisiana suit.

### B. General Forum non Conveniens Principles

Although the Court believes "first filed" principles do not inhibit transfer of this case, a complete disposition of the issues requires application of general *forum non conveniens* principles, as embodied in 28 U.S.C. § 1404(a) ("1404(a)"). This statute provides "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

As an initial matter we note that this motion was timely filed and is one that can be asserted by defendants as well as plaintiffs to an action. 28 U.S.C. § 1404(a). Courts have long recognized a difference, however, in motions to change venue originating with a defendant rather than a plaintiff. The plaintiff has the right under federal law to select the forum in which the suit he initiates is to proceed. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); *Time, Inc. v. Manning,* 366 F.2d 690 (5th Cir.1966). This choice is to be upset by a change of venue

only if a defendant makes a clear showing of facts that establish either "oppressiveness or vexatiousness towards a defendant as to be out of all proportion to plaintiff's convenience ... or (that) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831–32, 91 L.Ed. 1067 (1947). The question to be decided in such cases as this one is whether a court that has proper jurisdiction and venue over a cause of action should nevertheless, exercising its broad discretion in this regard, hold that equitable considerations recommend that another court, which also has jurisdiction and venue, should hear the action.

The Supreme Court has set out the analytic framework for exercising this power to transfer in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), and its companion case, *Koster v. Lumbermens Mutual Casualty Co.,* 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947); and *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 240, 102 S.Ct. 252, 257, 70 L.Ed.2d 419 (1981). These cases set out "private interest factors" and "public interest factors" to guide a court's determination of a forum's convenience. *Gilbert,* 67 S.Ct. at 843. Private interest factors include the relative access and ease to sources of proof; availability of compulsory process for obtaining unwilling witnesses and the cost of transporting willing ones; the ability to enforce judgment or to obtain a fair trial and the extent to which plaintiff's choice of a less than convenient forum was designed to harass the defendant. Public interest factors involve administrative difficulties flowing from congested centers of litigation; the interest of the public at large in deciding a case that has to do with their interests; unfairness of imposing jury duty on those who live outside the community affected by the litigation; trying diversity cases in a forum that is familiar with the law applicable to procedural and any pendant state law claims. *Gulf Oil,* 67 S.Ct. at 843.

### C. Jurisdiction and Venue in the Central District of California

The Court finds that the Central District of California clearly has jurisdiction and venue to hear this suit and Merle Norman does not dispute this issue. The California court has *in personam* jurisdiction because plaintiff is incorporated in California and has its principal place of business there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *T.M. Hylwa, Inc. v. Palka,* 823 F.2d 310 (9th Cir.1986). Since defendants are initiating this transfer, they are consenting to jurisdiction in that court and have no claim to challenge it. Because subject matter jurisdiction is based solely on diversity of citizenship, California is a proper venue for this action according to 28 U.S.C. § 1391; it is the state where plaintiff is incorporated and has its principal place of business.

Since this case could have been brought in the Central District of California, we now apply the factors set out in *Gulf Oil* and its progeny to determine whether movers have met their burden of proving that the equities compel transfer to that Court.

### D. Venue Considerations

█ MC & G and the Martins make essentially eight arguments for this Court to apply the *forum non conveniens* doctrine to this case: (1) the subject matter of the controversy before this Court arises out of or in connection with transactions taking place in the Central District of California; (2) the subject matter of this suit arises out of transactions and events set forth in the California litigation and calls for determination of the same or substantially similar questions of law so that the two suits should be tried together; (3) substantially all the books, records, documents and indispensable witnesses to this suit are located in the Central District of California and relatively few of these can be found within the Eastern District of Louisiana; (4) the burden of transporting willing witnesses located in California to this district; (5) Merle Norman instituted this litigation in bad faith in order to "win the race to the courthouse;" (see above) (6) discovery has

begun in the California suit; (7) the subject matter of this suit presents questions of law virtually identical to those of a consolidated action now pending before the Honorable Ronald M. Takasugi, *James L. Kemper v. Merle Norman Cosmetics, Inc.*, Case No. 86–5734 RMT (Gx) and *Retail Cosmetic Concepts v. Merle Norman Cosmetics, Inc.*, Case No. CV86–0645 RMT (Gx). Judge Takasugi has also been assigned the suit filed by the Martins and MC & G against Merle Norman as a related case to the consolidated action. (Doc. 16, Exhibit "A") and (8) this action will involve questions of California law.

Several of the points raised by MC & G and the Martins are not sufficient, viewed individually, to compel transfer. The fact that the suit's subject matter has a connection with events taking place in California and has a connection with the California litigation will not by themselves support a motion to transfer. These contentions establish only that the suit could have been brought in California, as discussed earlier.

The Court notes that the fact that discovery has begun in the California litigation does not, by itself, require transfer. It is likewise true, however, that significant litigation of identical questions in one forum is a factor that may authorize transfer in order that judicial resources be used efficiently. *Gulf Oil*, 67 S.Ct. at 842. While the motion practice pervading this action has demanded time and expense and pre-trial and trial dates have been set in accordance with this Court's usual scheduling practices, it is clear that considerable fact discovery has been undertaken and much more doubtless remains to be done in California. The balance tips slightly towards the California forum on the basis of this factor.

The presence of claims arising under California law has not been considered by the Court. Neither MC & G nor the Martins specify what these California law issues are. The Court is therefore unable to determine if the issues are of such complexity or unique nature as to demand decision by California courts. *Gulf Oil*, 67 S.Ct. at 642. Transferring this action to California

will require the federal court there, however, to apply Louisiana law. Claims under these laws, particularly those brought under the Louisiana Antitrust and Unfair Trade Practices and Consumer Protection laws, are not so unique, nor do they involve factors of such weight and complexity, as to preclude transfer.

The other relevant factors have been discussed by the Court in connection with its earlier findings relative to transfer under the "first filed" rule. There is no need to repeat them here. Suffice it to say that injecting them into the *Gulf Oil* equation produces the same result announced earlier: the weight of the equities, particularly the relative ease of access to sources or proof available to both parties, compel transfer of this suit to the more convenient California forum.

An appropriate order will therefore issue.