**IGLOO PRODUCTS CORP., Plaintiff,**

v.

**THE MOUNTIES, INC., Defendant.**

**Civ. A. No. H–90–171.**

United States District Court,
S.D. Texas,
Houston Division.

April 18, 1990.

---

J. Ray Riley, Houston, Tex., for plaintiff.

Jay H. Dushkin, Saccomanne & Clegg, Houston, Tex., and Stephen P. English and John P. Ashworth, Bullivant, Houser, Bailey, Pendergress & Hoffman, Portland, Or., for defendant.

## ORDER

HITTNER, District Judge.

Pending before this Court is a motion to dismiss (Document # 2) filed by defendant The Mounties, Inc. ("The Mounties").

On December 22, 1989, The Mounties, a Washington corporation, filed suit against Igloo Products Corporation ("Igloo"), a Texas corporation, in an Oregon state court. On January 18, 1990, Igloo filed this action against The Mounties. Igloo subsequently removed the Oregon state court proceeding to Oregon federal court.

The Mounties alleges that Igloo wrongfully terminated a sales agreement between Igloo and The Mounties. Under the contract at issue, The Mounties became the sales representative for Igloo in Oregon and Washington beginning in 1987. Problems arose in 1989, and Igloo terminated the arrangement in September 1989. Although some settlement discussions occurred between the parties, both filed suit against the other without informing the opposite party.

The Mounties moves for dismissal of this action on three grounds: (1) that this Court does not hold personal jurisdiction over it, (2) that this Court should abstain from hearing this case in light of the ongoing Oregon proceeding, and (3) that Oregon is a more convenient forum under 28 U.S.C.

§ 1404(a) (1982). The Court need only address The Mounties' first two arguments.

The Mounties alleges that this Court lacks personal jurisdiction over it. The Court must address this claim by referring to fourteenth amendment due process concerns: the Texas long-arm statute at issue reaches the limit of due process. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir.1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (1990); *Hall v. Helicopteros Nacionales de Colombia, S.A.*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

This Court must determine whether the nonresident defendant has had minimum contacts with Texas such that maintenance of the suit in this forum does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985), the Fifth Circuit isolated two issues to be considered under this analysis: (1) whether the nonresident has "some minimum contact with the forum which results from an affirmative act on his part;" and (2) whether it is "fair and reasonable to require the nonresident to defend the suit in the forum state."

Despite The Mounties' argument to the contrary, the Court finds that *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), controls the personal jurisdiction issue in this case. In *Burger King*, although there were almost no physical ties between the forum state and the defendant, the Supreme Court found that the district court held personal jurisdiction over the out-of-state franchisee based on the existence of a franchise contract and surrounding circumstances indicating that the franchisee had "entered

into a carefully structured 20–year relationship that envisioned continuing and wide-reaching contacts" with the franchisor in the franchisor's home state. *Id.* at 480, 105 S.Ct. at 2176. The Supreme Court considered, among other things, the long-term nature of the relationship and the franchise contract's choice-of-law provisions, in determining the defendant's "deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there." *Id.* at 482, 105 S.Ct. at 2187.

■ Like the parties in *Burger King*, who contracted for a long-term relationship, Igloo and The Mounties have entered into successive contracts for a period of at least 13 years. Furthermore, the most recent contract (as well as, according to Igloo's uncontroverted assertions, all previous contracts) provides that Texas law would apply.[1] This fact also places the instant action within *Burger King*, a case in which the contract provided that the law of Florida, the jurisdictionally challenged state, would apply. *Id.* at 483, 105 S.Ct. at 2188. Igloo's principal place of business is in Texas, and The Mounties was aware of this at all times. In addition, The Mounties dealt with Igloo in Texas by mail and telephone.[2] The Mounties directly paid monies owed by them to Igloo by sending checks to Texas. In addition, The Mounties participated in several meetings in Texas directly concerned with Igloo's business and the contract in question. The *Burger King* Court considered all of the above-listed factors relevant. *See id.* at 480–83, 105 S.Ct. at 2186–88.

Moreover, The Mounties does not suggest that it entered into the contract as the result of Igloo's undue influence or unequal bargaining power. In light of the above, The Mounties' contacts with Texas can "in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.' " *Id.* at 480, 105 S.Ct. at 2186 (citations omitted).

---

**1.** Clause 22 of the 1987 Sales Agreement provides: "Governing Law. This agreement shall be governed by the laws of the state of Texas, United States of America."

**2.** That The Mounties dealt primarily with a sales agent in California does not distinguish this case

from *Burger King*. Indeed, unlike in *Burger King*, Igloo never established an office in The Mounties' home state. *Burger King*, 471 U.S. at 481, 105 S.Ct. at 2186. At all times, The Mounties has had dealings with Igloo in Texas.

The Mounties also moves for dismissal based on the pendency of the Oregon proceeding previously filed in state court. The Mounties originally argued that this Court should abstain from jurisdiction based on the standards of *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, because Igloo subsequently removed the Oregon state court proceeding to federal court, this Court will examine The Mounties' argument on the standard for dismissal due to the pendency of a parallel federal proceeding rather than the stricter standard governing abstention due to the pendency of a related state court proceeding.

 Courts in the Fifth Circuit generally follow a "first-filed rule" in deciding which Court should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different suits. *West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 730 (5th Cir.1985); *see Municipal Energy Agency v. Big Rivers Electric Corp.,* 804 F.2d 338, 343 (5th Cir.1986); *Superior Savings Association v. Bank of Dallas,* 705 F.Supp. 326, 330 (N.D.Tex.1989). "In the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc. v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir.1971).

 The Court must initially determine which proceeding was commenced first for purposes of the first-filed rule. Although the proceeding in the Oregon state court was filed on December 22, 1989, Igloo did not remove that proceeding until after it had initiated this suit. The question is whether in applying the first-filed rule, the Court should look to the date on which the Oregon state court suit was filed or the date on which it was removed to federal court. The Court considers the date of filing in state court to be the relevant benchmark. This conclusion seems inescapable, as a district court takes the case as it finds it when it is removed from state

court. *Federal Deposit Insurance Corp. v. Taylor,* 727 F.Supp. 326, 329 (S.D.Tex. 1989).[3] Indeed, a circuit court held in 1884 that in deciding which of two federal courts has prior jurisdiction when one of the cases has been removed from state court, a federal court's jurisdiction relates back to the date the state court acquired jurisdiction. *Owens v. Ohio Cent. R. Co.,* 20 F. 10 (C.C.W.Va.1884); *see also Staple v. United States,* 740 F.2d 766, 769–70 (9th Cir.1984) (looking to the original date of filing in state court for purposes of the running of a statute of limitations).

 In determining whether to apply the first-filed rule, the Court must also determine whether sufficiently "compelling circumstances" exist to avoid the rule's application. In reviewing the submissions of the parties, the Court finds an absence of any compelling circumstances that would dictate that this Court not apply the first-filed rule.

The *Mann Manufacturing* court did not delineate the "compelling circumstances" that might preclude application of the first-filed rule. However, one of the special circumstances cited by courts that have declined to apply the first-filed rule is an indication that the first-filed suit was initiated in anticipation of the subsequent suit. *See Amerada Petroleum Corp. v. Marshall,* 381 F.2d 661 (5th Cir.1967), *cert. denied,* 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968); *Merle Norman Cosmetics v. Martin,* 705 F.Supp. 296, 299 (E.D.La.1988). In the case at bar, The Mounties mailed Igloo a copy of the initial pleading in the Oregon state court proceeding weeks before Igloo filed this action. The Court finds the minor discrepancies between the copy sent to Igloo and the one actually filed to be of no significance whatsoever in concluding that at minimum Igloo was aware that The Mounties intended to file suit. *Cf. Columbia Pictures Industries, Inc. v. Schneider,* 435 F.Supp. 742 (S.D.N.Y.1977) (overturning the first-filed rule when a copy of a complaint was mailed to the other party but was not filed), *aff'd mem.,* 573 F.2d 1288 (2d Cir.1978).

---

**3.** This principle was clearly stated in *Bryant v. Thompson,* 27 F. 881, 882 (C.C.Iowa 1886). "Now when a cause is removed from the state court to the United States circuit courts, it stands in the latter just as it stood in the state court before removal."

**218**

In determining whether this case presents "compelling circumstances," this Court might also look by analogy to the considerations that govern transfer of venue for forum non conveniens under 28 U.S.C. § 1404(a). *See Superior Savings Association*, 705 F.Supp. at 330–31; *Merle Norman Cosmetics*, 705 F.Supp. at 298–301. Section 1404(a) provides that a district court may transfer a case "[f]or the convenience of parties and witnesses" or "in the interests of justice." Under section 1404(a), a court should not disturb the plaintiff's choice of venue absent "such oppressiveness and vexation to a defendant as to be all out of proportion to plaintiff's convenience" or "considerations affecting the court's own administrative and legal problems." *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947).

By analogy, Igloo has not shown that any "oppressiveness or vexatiousness" associated with an Oregon forum is "all out of proportion" to the convenience of that forum to The Mounties. First, this is a contract dispute, and the substantial performance of the contract took place in Oregon and Washington, not Texas. *See American Carpet Mills, Etc. v. Gunny Corp.*, 649 F.2d 1056, 1059 (5th Cir. Unit B July 1981); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir.1986) (holding that better venue lies at the place of performance than at the place of repudiation). Second, the Court can see no reason why Oregon is not as convenient a forum as Texas.[4] Indeed, it would seem that any nonparty witnesses will be from Oregon or Washington. *See, e.g., Leroy v. Great Western United Corp.*, 443 U.S. 173, 176, 99 S.Ct. 2710, 2712, 61 L.Ed.2d 464 (1979) (holding that a court should consider the availability of witnesses). Third, the issues involved in the two actions are virtually, if not completely, identical. Although Igloo has amended its

pleading in this suit to allege trademark infringement and misuse of confidential information, Igloo ostensibly can maintain these claims in the Oregon proceeding.

■ The Court thus concludes that it should abstain from hearing this case based on the pendency of a related federal court proceeding. The Court is therefore presented with the options of staying, dismissing, or transferring the action. *See West Gulf Maritime Association*, 751 F.2d at 729 & n. 1. There may be some question as to the precise similarity of the claims asserted in the Texas and Oregon suits. This Court will therefore transfer this case to the United States District Court for the District of Oregon so that the Oregon district court might determine how the two cases might best be consolidated.

Based on the foregoing, the Court

ORDERS that this action is hereby TRANSFERRED to the United States District Court for the District of Oregon.

---

4. As Igloo states in one of its memoranda in discussing the personal jurisdiction question, "[s]ince modern transportation and communications make it less burdensome to defend in a state where one engages in economic activity, it usually is not unfair to subject the party to the burden of litigating in a forum for disputes relating to such economic activity." Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Fed.R.Civ.P. 12 Motions to Dismiss and, Alternatively, to Transfer Venue at 10.