Frances Margaret STACK and
J.E. Stack, Jr., Plaintiffs,

v.

WHITNEY NATIONAL BANK,
Defendants.

Civ. A. No. E91–0034(L).

United States District Court,
S.D. Mississippi, E.D.

July 8, 1991.

Affirmed, 958 F.2d 1078.

Glen Gates Taylor, Harry E. Neblett, Jr., Jackson, Miss., for plaintiffs.

Paul H. Stephenson, III, Watkins & Eager, Jackson, Miss., David J. Conroy, pro hac vice, William T. Finn, New Orleans, La., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on three motions. The first is a motion for a preliminary injunction filed by plaintiffs Frances Margaret Stack and J.E. Stack, Jr. The second is a motion to dismiss filed by defendant Whitney National Bank (Whitney), and the third is a motion, filed by plaintiffs, to strike portions of an affidavit submitted by the defendant. Each side responded to the motion of the other and the court has considered the memoranda of authorities submitted by the parties in ruling on the motions.

The Stacks, Mississippi residents, filed the instant declaratory judgment action on April 3, 1991, the same day that the plaintiffs were informed by Whitney, a New Orleans banking institution, that Whitney was going to sue them on certain demand notes executed by the Stacks in favor of Whitney. It is undisputed that the Stacks owe Whitney millions of dollars.[1] However, the Stacks seek, by way of this declaratory judgment action, filed in this court only one day before Whitney filed suit in the United States District Court for the Eastern District of Louisiana, a declaration that they are not in default on these notes, notes as to which Whitney has been demanding payment since October 1990, because they and Whitney had entered certain alleged oral agreements, pursuant to the terms of which the notes are not yet in default.

 The Stacks seek to enjoin the litigation in the Louisiana federal court because this action was filed first, as well as to enjoin any other future litigation by Whitney, while Whitney seeks dismissal of this litigation as a blatant attempt at improper forum shopping. The court is not concerned at this juncture with the merit of the Stacks' claims, but merely how and why they were brought in this court. Although the Fifth Circuit does generally adhere to a "first-filed" rule in situations where there are multiple suits concerning the same subject matter pending in different federal courts, *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403 (5th Cir.1971), the general rule is not applicable in cases of compelling circumstances which dictate that the first action be dismissed rather than the second. *Id.* at 407. A suit brought purely in anticipation of another is subject to dismissal under the compelling circumstances exception. *909 Corp. v. Village of Bolingbrook Police Pension Fund,*

---

1. According to Whitney, the Stacks owe over eighteen million dollars. The Stacks complain of Whitney's application of payments an calculation of interest but have not offered an alternate figure.

741 F.Supp. 1290, 1292 (S.D.Tex.1990). For the reasons discussed below, this case is a textbook example of, and illustrates the need for, the exception to the rule.

The undisputed facts are as follows. The Stacks are engaged in the business of acquiring, developing, investing in and selling properties and other assets, including mineral interests, oil and gas leases, oil and gas wells and timber. The Stacks and Whitney have had a business relationship that spans two and one half decades. In 1966 the Stacks opened a checking account at Whitney in New Orleans, Louisiana. Since that time amounts loaned to the Stacks by Whitney have been placed in this account. Through the years the Stacks have executed several security instruments in favor of Whitney and Mr. Stack has assigned two life insurance polices to Whitney. At present, in addition to the amounts owing on four promissory notes upon which interest accrues in the amount of $5,467.0138 per day, the Stacks' checking account at Whitney is overdrawn in the amount of $90,104.14.

The four notes were renewed in June 1987. At some point thereafter Whitney became concerned with the accruing interest,[2] and in May of 1989, two Whitney officers met with the Stacks in Meridian, Mississippi to discuss the seriousness of the Stacks' financial situation. Whitney expected payment by December 31, 1989, but payment was not forthcoming. The parties met again in March of 1990 in New Orleans to discuss the outstanding indebtedness. Mr. Stack indicated that Whitney would be repaid by April 30, 1990, but that date came and went with no payment at all by the Stacks. By letter dated October 29, 1990, Whitney made formal demand for full payment. Following receipt of this notice, Mr. Stack proposed and Whitney considered various alternatives to immediate full payment of the amounts owed. Stack offered to repay Whitney four to four and one half million dollars from the profits of a proposed sale of property the Stacks owned in Florida. However, the sale has been repeatedly delayed and has not as of yet been consummated.

At a February 1991 meeting with Whitney officers, Mr. Stack offered Whitney mortgages on various properties, but, according to Whitney, none were satisfactory inasmuch as many of the properties were already subject to first mortgages.[3] In any event, on April 3, 1991 Whitney's counsel, William Finn, contacted counsel for the Stacks and advised that the Stacks' proposal was unacceptable and that Whitney would be filing suit. Mr. Stack telephoned one of the bank's officers, Roland Howell, and inquired as to the reasons for the bank's decision. Stack indicated to Howell that he might call the bank's president, William Marks.[4] Later the same day the Stacks filed the instant action. The following day, after learning from the Stacks' attorney that they had filed suit, Whitney filed suit in Louisiana.

■ In support of its contention that the suit by the Stacks is nothing more than a procedural device by which the Stacks are attempting to delay enforcement of their debt, Whitney submits a letter written by Mr. Stack to his Florida attorney concerning other litigation, which reads in pertinent part as follows:

2. The Stacks made payments on their loans when they received money from business deals and not on any regular basis or in any set amount.

3. Whitney did at some point consider a security interest in certain Alabama mineral interests owned by the Stacks; however, it maintains that it determined to decline this proposal as well, while the Stacks allege that Whitney accepted one million dollars of the money they made on the sale of these mineral interests, and in return, agreed to allow the Stacks to use some of the money they were to make on the Florida property for other purposes. From this alleged agreement arises the Stacks' claim for breach or anticipatory breach of agreement concerning the application of sale proceeds.

4. Mr. Stack maintains that he stated that he *might* call Marks, but he decided not to do so after Howell suggested that it would be to no avail. Whitney contends that Mr. Stack told Howell that he *would* call Marks and that is why Whitney did not file suit on the third of April, as it was awaiting the outcome of the Stack/Marks conversation.

I would like for you to ask Gillis to ask them to give us until July 10, 1987 to pay these loans off in full ... or give us the amount as requested to get loans current and reinstated. If you don't get proper response to the above proposals then I would like for you to file a 30 million dollar damage suit against them on Friday May 1, 1987 on the basis they have misled us. The mortgage is not correct may also be usury [sic], all those good things that you lawyers can find that a Big Giant multi billion dollar company trying to put a hard working little farmer and rancher out of business [sic].[5]

The Stacks have moved to strike this letter on the ground that its prejudicial effect outweighs its probative value. Aside from the fact that there is no jury to be unduly prejudiced against the Stacks, this letter is probative in determining whether the suit in this case is merely an anticipatory action and hence whether the Stacks have improperly invoked the Declaratory Judgment Act, which grants no jurisdiction but merely provides an additional federal court remedy in situations where persons seek an adjudication as to legal rights. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

■ As noted by the United States Supreme Court in *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183–84, 72 S.Ct. 219, 221–22, 96 L.Ed. 200 (1952):

> The Federal Declaratory Judgment Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

(footnotes omitted). Accordingly, district courts are not bound to grant declaratory relief every time it is sought. Instead they must carefully weigh equitable considerations, such as whether the suit filed first was initiated merely in anticipation of a filing by the defendant in another forum, and determine if the purposes behind the enactment of the Declaratory Judgment Act are served by maintaining the suit at hand. *See, e.g., Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir.1983); *909 Corp. v. Village of Bolingbrook Police Pension Fund*, 741 F.Supp. 1290, 1292–93 (S.D.Tex.1990); *see also Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627–29 (D.C.Cir.1975).

The Fifth Circuit has recognized that whether a suit is filed in anticipation of another is a factor to be considered in determining whether to dismiss a declaratory judgment action. *See Pacific Employers Ins. Co. v. M/V Capt. W.D. Cargill*, 751 F.2d 801, 804 (5th Cir.1985); *Mission*, 706 F.2d at 602; *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir.1967). The *Mission* court noted that promoting forum shopping was not a purpose of the Declaratory Judgment Act, and indicated that if it has been utilized for that purpose, the suit should be dismissed. *Id.* at 602 n. 3. Although there is no real evidence of deception on the part of the Stacks in the instant case,[6] *cf. Southmark*

---

5. Although this one matter outside the pleadings was considered in connection with one aspect of Whitney's motion to dismiss, the court's decision should not be interpreted as reaching the merits of the case.

6. The only alleged deception by Mr. Stack concerns his April 3, 1991 phone conversation with Howell and events connected with the call. After speaking with Stack on that date, Howell believed that Mr. Stack would attempt to call the bank's president to reopen negotiations. For that reason Whitney's attorney, William Finn, withheld filing Whitney's suit in Louisiana. The next morning the Stacks' attorney contacted Finn and asked if Whitney had filed its suit. When Finn responded that it had not, the attorney informed him that the Stacks had filed suit the previous day. There may have been a misunderstanding, inasmuch as Howell concluded from Mr. Stack's remark that Finn should delay filing suit on Whitney's behalf pending the outcome of Mr. Stack's conversation with the bank president.

*Corp. v. PSI, Inc.*, 727 F.Supp. 1060 (S.D.Miss.1989) (first suit dismissed where first plaintiff filed suit one day before scheduled settlement meeting), it is nonetheless apparent that they filed suit only because Whitney had decided not to accept their proposals and to sue them.

The Stacks' argument that they did not know that Whitney would file suit in another jurisdiction, since it had sued in Mississippi as well as other jurisdictions in the past, is unavailing. The Stacks' attorney had contact with a New Orleans attorney the very day the Stacks filed this action. From the circumstances it was reasonably clear that suit was soon to be filed by Whitney in Louisiana. *See 909 Corp.*, 741 F.Supp. at 1293 (court cannot allow party to secure more favorable forum by filing action for declaratory judgment when it has notice that other party intends to file suit involving same issues in another forum).

■ It is beyond dispute that a federal court may in its discretion, for the purpose of avoiding multiplicity of litigation, stay proceedings in other courts. *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir.1985). In this case however, it is not the first-filed suit which should be the vehicle through which the parties reach judgment, but the second-filed suit, in which the Stacks may assert all their claims against Whitney. The usual preference for the plaintiff's choice of forum is outweighed by countervailing equitable considerations. *See Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 628–29 (D.C.Cir.1975).

■ The Stacks seek to avoid application of these principles by arguing that since, in addition to the claim for declaratory relief, they have alleged breach of duties of good faith and fair dealing, breach of fiduciary duties, breach or anticipatory breach of agreement concerning the application of sale proceeds, and incorrect charges and applications, and have included a claim for punitive damages, their suit is not merely for declaratory judgment, but for affirmative relief which they were fully entitled to file. A similar argument was rejected in *Natural Gas Pipeline Co. v. Union Pacific Resources Co.*, 750 F.Supp. 311 (N.D.Ill. 1990); *see also Hanes Corp. v. Millard*, 531 F.2d 585 (D.C.Cir.1976) (anticipation of defenses is not ordinarily proper use of declaratory judgment procedure). In the *Natural Gas Pipeline* case, the district court noted that even if affirmative relief were sought in addition to declaratory judgment, the suit would nonetheless be dismissed as an anticipatory suit. 750 F.Supp. at 314. In this case, regardless of how they characterize them, the Stacks' claims constitute nothing more than matters in avoidance or affirmative defenses. They undeniably owe Whitney a large sum of money and are trying to preclude recovery of the amounts owed. And, even if some of their claims could be construed as seeking affirmative relief, they should be dismissed under the present circumstances.

The Stacks contend that their suit is not anticipatory since they had it prepared for months and were prepared to file it as soon as negotiations with Whitney broke down. It is clear, however, that they never intended to file suit unless and until it became readily apparent that Whitney was about to sue them. Accordingly, the court is of the opinion that it is of no consequence that they had prepared pleadings and were simply waiting for Whitney to move toward the courthouse. *But see Mentor Graphics Corp. v. Trimeter Technologies Corp.*, 739 F.Supp. 542 (D.Or.1990) (suit not anticipatory where vice-president of corporation indicated that corporation had decided to file declaratory judgment action several months earlier if negotiations broke down); *Ashe v. Pepsico, Inc.*, 443 F.Supp. 84 (S.D.N.Y.1977) (first-filed trademark infringement suit not in anticipation of suit filed later the same day where first suit had been prepared for filing earlier). While the court is cognizant of the *Mentor* holding, that case is distinguishable since forum shopping was apparently not specifically considered, and considerations of con-

venience, expediency and efficiency weighed in favor of the first and less inconvenient forum.[7] In this case, as the Stacks are in their seventies, Ms. Stack is ill and two of their witnesses reside in Mississippi, the Stacks argue that trial would be more convenient in Mississippi. However, Whitney has offered to take Ms. Stack's deposition for use in lieu of trial testimony, and the majority of Whitney's witnesses are in Louisiana. Additionally, despite the Stacks' argument to the contrary, the center of gravity is, or most significant relationship is with, Louisiana, and accordingly, Louisiana law will apply to interpretation of the notes in question.[8] Therefore, convenience, expediency and efficiency do not weigh in favor of trial in Mississippi.

■ Insofar as the Stacks' motion to strike portions of an affidavit submitted by Whitney on the basis that it contains hearsay is concerned, that motion is moot in light of supplemental affidavits submitted by Whitney. In any event, it is not necessarily inappropriate for the district court to consider hearsay when ruling on a motion for a preliminary injunction. *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir.1987).

Based on the foregoing, the court concludes that the Stacks' utilization of declaratory judgment is in this situation inappropriate and declines to entertain the declaratory judgment action. The Stacks' motion for a preliminary injunction is denied as is their motion to strike portions of an affidavit submitted by Whitney. The court grants Whitney's motion to dismiss this action.

A separate judgment will be issued in accordance with Rule 58 of the Federal Rules of Civil Procedure.

ORDERED.

---

7. The *Ashe* holding is not persuasive since declaratory judgment actions are often used as a method of settling trademark infringement disputes, and, as in *Mentor,* the more convenient forum was that of the first-filed action. *Ashe,* 443 F.Supp. at 86–87.

8. The Stacks argue that Mississippi law should apply to the controversy in this case since some negotiations as to payment occurred in Mississippi and they executed some security instruments, which cover Mississippi property, in Mis-

sissippi. However, that argument is not persuasive in light of the fact that they traveled to Louisiana and sought to obtain money from a Louisiana lending institution.

The Stacks also argue that Mississippi would not apply certain of Louisiana's lending laws as they are contrary to Mississippi public policy. If true, this assertion only bolsters Whitney's contention that the Stacks should not be able to obtain a more favorable outcome by forum shopping.