**FLINT INK CORPORATION, Plaintiff,**

v.

**Sharen E. BROWER, Defendant.**

**Civ. A. No. 93–73761.**

United States District Court,
E.D. Michigan, S.D.

Feb. 25, 1994.

Eric M. Dobrusin, Harness, Dickey, Troy, MI, for Sharen E. Brower.

Michael R. Dinnin, Jr., Dinnin & Dunn, Troy, MI, for Flint Ink Corp.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

GADOLA, District Judge.

On December 3, 1993, defendant filed a motion to dismiss or, in the alternative, motion to transfer venue to the Northern District of Iowa, Western Division, at Sioux City. Plaintiff responded December 22, 1993. Defendant filed a reply January 3, 1994.

### I. Facts

In 1989, defendant Sharen Brower, a resident of Iowa, and her attorney James Gailey entered into discussions with plaintiff Flint Ink Corporation ("Flint Ink") regarding the possible commercializing of a soy ink that Brower claims to have invented. On January 7 or 8, 1990, Brower and Gailey traveled to Michigan and met with officers of Flint Ink. They returned to Iowa the same day.

On the day of the meeting, Brower and Gailey left a copy of a proposed Confidential Disclosure Agreement ("CDA") which stated that Brower claimed ownership of the invention entitled "Soy Ink Art Based Media," and that the purpose of the disclosure was for the recipient to "evaluate the commercial utility of said invention or improvements." Appendix A to Response. On January 15, 1990, Robert Savageau, Flint Ink's technical director, forwarded a revised copy of the CDA directly to defendant. After consulting with a local patent attorney, Gailey made some amendments to Flint Ink's amended CDA, had Brower sign the agreement, and returned the signed CDA to Michigan on January 31, 1990. On February 15, 1990, Savageau signed the agreement on behalf of Flint Ink. On February 19, 1990, Savageau mailed an executed copy of the CDA to Gailey.

Between February 1990 and July 1990, Brower shared some or all of her idea with Flint Ink. Flint Ink, however, was unable or unwilling to implement Brower's idea. In August 1990, Gailey wrote Flint Ink a letter accusing Flint Ink of having implemented Brower's idea, through its subsidiary Sinclair & Valentine, in violation of the CDA. In September 1990, Flint Ink sent a letter denying the accusations.

Twenty-seven months later, after Brower's patent application was granted, Brower's Iowa patent counsel, Edmund J. Sease, raised the issue again by letter dated January 6, 1993. Sease's letter offered to enter into negotiations regarding licensing if Flint Ink responded to the letter within one month. Flint Ink did not respond.

In August 1993, Sease sent a letter claiming that Flint Ink had breached the CDA and was infringing on Brower's patent. Sease demanded that Flint Ink and Sinclair & Valentine cease sale of the allegedly infringing soy ink products and, at the same time, offered to settle the matter for an unspecified sum of money.

On September 7, 1993, Flint Ink filed the instant action seeking declaratory judgment as to the validity of defendant's patent and as to whether plaintiff has breached the CDA. Without informing Brower or her counsel that it had filed the suit, Flint Ink continued its discussions with Brower's counsel up until the end of the 120–day period allowed for service. When settlement negotiations failed and the service period was about to expire, Flint Ink served defendant with notice of the suit.

Defendant Brower now moves to dismiss the case on the ground that there was no actual controversy at the time suit was filed, and on the ground that this court lacks *in personam* jurisdiction over her. Defendant requests, in the alternative, that the case be transferred to the Northern District of Iowa in Sioux City. For the following reasons, the court will deny both defendant's motion to dismiss and defendant's motion for transfer.

## II. Analysis

### A. Whether There Was an Actual Controversy Warranting Declaratory Judgment

■ Plaintiff's complaint seeks declaratory judgment on two issues: (1) whether defendant's patent is valid; and (2) whether there was a breach by plaintiff of the CDA. Declaratory judgment jurisdiction is provided by 28 U.S.C. § 2201 which provides that

> [i]n case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

Defendant claims that her actions prior to September 7, 1993 were not sufficiently threatening to create an actual controversy. The court disagrees.

> [T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 735 (Fed.Cir.1988). In patent cases, the test that is often used and is useful in evaluating complaints for declaratory judgments is two-part: first, the question asked is whether the defendant's conduct created on the part of plaintiff a reasonable apprehension that the defendant will initiate suit if the plaintiff continues the allegedly infringing activity; and second, the plaintiff must presently be

infringing upon the patented invention and not merely considering entering into a business that might infringe. *Arrowhead*, 846 F.2d at 736 (*citing Goodyear Tire & Rubber Co. v. Releasoners, Inc.*, 824 F.2d 953, 955 (Fed.Cir.1987)). The test is objective and is applied to the facts existing at the time the complaint is filed. *Id.* If a defendant has expressly charged a current activity of the plaintiff as infringing on defendant's patent, clearly there is an actual controversy. *Id.*

■ In the instant action, defendant has expressly charged plaintiff with infringement. Prior to September 7, 1993, defendant had sent at least two letters—one in August 1990 and one in August 1993—alleging that plaintiff had breached the CDA and was infringing on defendant's patent. In both letters, defendant demanded that Flint Ink either cease infringement or pay defendant for use of the patent. In response to both letters, plaintiff adamantly denied that its defendant had a valid patent claim. Thus, as of September 7, 1993, there was in this case an actual controversy regarding the parties' patent and contractual rights on which the court may render a declaratory judgment.

### B. Whether Defendant Is Subject to Personal Jurisdiction in Michigan

■ The burden is on the plaintiff to establish the existence of personal jurisdiction over the defendant. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir.1980). However, when determining whether there have been sufficient contacts with the forum state to establish personal jurisdiction, the court must interpret the pleadings and affidavits in the light most favorable to the plaintiff. *Id.*

■ A court may exercise personal jurisdiction over an out-of-state defendant only if the defendant is amenable to service of process under the state's long-arm statute, and only if the exercise of personal jurisdiction would not deny the defendant her constitutional right to due process of law. *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). The law provides for two types of personal jurisdiction: general personal jurisdiction and specific or limited

personal jurisdiction. The principles of general jurisdiction are applied when the plaintiff's cause of action is unrelated to the defendant's in-state activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 1872 n. 9, 80 L.Ed.2d 404 (1984). Specific jurisdiction is applied when the plaintiff's cause of action arises out of the defendant's transaction of business within the forum. *Id.* at n. 8. In the instant case, plaintiff does not allege that defendant engages in any on-going in-state activities upon which general jurisdiction might obtain.[1]

■ Michigan's long-arm statute regarding specific jurisdiction over individuals provides that

> [t]he existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of [Michigan] to exercise limited personal jurisdiction over such individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships.
>
> (1) The transaction of any business within the state.
>
> \*   \*   \*   \*   \*   \*
>
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

Mich.Comp.Laws Ann. § 600.705. The wording of first enumerated relationship, "the transaction of any business within the state," is very broad. "Any" includes "each" and "every" and comprehends even "the slightest" business transactions. *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623

(1971). In the instant case, defendant traveled to the state of Michigan seeking out a business relationship with a Michigan corporation. She entered into an agreement whereby Flint Ink was to provide her the service of evaluating the feasibility of commercializing her invention and to hold her invention in confidentiality. In letters to the company, defendant has claimed that the company has violated that agreement. This court finds that these acts of defendant constitute the transaction of business and the creation of a contract with a Michigan corporation for services to be rendered in the state. Thus, defendant's actions satisfy subsections (1) and (5) of the Michigan limited personal jurisdiction statute.

■ Once it has been determined that the Michigan long-arm statute has been satisfied, attention must be directed to whether the defendants have established "minimum contacts" with the forum state, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). This standard is satisfied and a defendant is subject to *in personam* jurisdiction when contacts with the "forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). With respect to interstate contractual obligations, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are fairly subject to regulation and sanctions in the other state for the consequences of their activities. *Travelers Health Ass'n v. Virgi-*

---

**1.** Michigan's long-arm statute regarding general personal jurisdiction over individuals provides that

> [t]he existence of any of the following relationships between and individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of [Michigan] to exercise general jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.
>
> (1) Presence in the state at the time when process is served.

> (2) Domicile in the state at the time when process is served.
>
> (3) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745 [addresses cases where written agreement is sole basis of jurisdiction].

Mich.Comp.Laws Ann. § 600.701. Plaintiff makes no allegation that Brower falls into any of these three categories.

*nia,* 339 U.S. 643, 647, 70 S.Ct. 927, 929, 94 L.Ed. 1154 (1950).

In the instant case, defendant engaged in negotiations to sell her idea to a Michigan company, presumably for ongoing manufacture. The negotiations entailed her traveling on one occasion to Michigan. The court finds that by traveling out of her state to seek out a manufacturer and/or purchaser of her invention, defendant reached out beyond her resident state of Iowa to create a continuing relationship with plaintiff, a citizen of Michigan. The court therefore finds that defendant did purposely avail herself of the privilege of conducting activities within the state of Michigan and should have reasonably anticipated being haled into court in that state. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958).

**C. Whether the Venue of the Case Should Be Transferred to Iowa**

■■■ Defendant requests, in the event her motion to dismiss is denied, that the venue of this case be transferred to the Northern District of Iowa where she resides. Under 28 U.S.C. § 1391(b), addressing venue of federal actions,

> [a] civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought ... in (1) a judicial district where any defendant resides ..., (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or in which a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

"The [venue] statutes are drawn with a necessary generality and usually give a plaintiff a choice of court, so that he may be quite sure of some place in which to pursue his remedy." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1946). As a general rule, unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should not be disturbed. *Id.* at 508, 67 S.Ct. at 843. In balancing the interests of the parties, the court may take into consideration such factors as

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.*

In the instant case, the witnesses who would be called to testify as to how plaintiff manufactures its soy ink and whether plaintiff has stolen the invention of defendant, are for the most part employees of plaintiff who reside in Michigan. It appears to the court at this stage of the litigation that the only witnesses likely to have to travel to Michigan from out-of-state are defendant herself, her counsel, and possibly her expert witness. For these reasons, the court finds that venue is more appropriate in Michigan than in Sioux City, Iowa.

**III. Conclusion**

For all of the foregoing reasons, the court shall deny defendant's motion to dismiss or, in the alternative, motion to transfer venue.

**ORDER**

Therefore, it is hereby **ORDERED** that defendant's motion to dismiss or, in the alternative, motion to transfer venue is **DENIED.**

**SO ORDERED.**