**Sharen E. BROWER, Plaintiff,**

v.

**FLINT INK CORPORATION, Defendant.**

**No. C 94–4012.**

United States District Court,
N.D. Iowa,
Western Division.

Oct. 11, 1994.

James W. Gailey, Newel, IA and Raymond P. Niro of Niro, Scavone, Haller & Niro, Chicago, IL, for plaintiff Sharen E. Brower.

Edward J. Keane of Margolin, Gildemeister, Willia, Mugan & Keane, Sioux City, IA and Michael R. Dinnan and Robert A. Dunn, Dinnin & Dunn, P.C., Troy, MI, for defendant Flint Ink Corp.

## ORDER RE: DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TO TRANSFER OR STAY

BENNETT, District Judge.

This is a patent infringement action brought by the developer and patentholder of a soy ink art medium against a corporation that produces ink products. Prior to initiation of the patentholder's suit in this court,

the corporation filed a declaratory judgment action embodying identical claims in the United States District Court for the Eastern District of Michigan. The corporation has moved to dismiss the present action for lack of personal jurisdiction and improper venue. In the alternative, the corporation asks this court to stay the present proceedings or transfer this case to the Eastern District of Michigan. The motion requires the court to examine the "first-filed rule" as it relates to declaratory judgment actions filed prior to the filing of a substantive suit in another district.

## I. INTRODUCTION AND FACTUAL BACKGROUND

In this lawsuit pursuant to 35 U.S.C. § 271 *et seq.*, filed February 7, 1994, plaintiff Sharen E. Brower (Brower), an Iowa citizen and resident, alleges that defendant Flint Ink Corporation (Flint), a Michigan corporation, has infringed and contributed to the infringement of her patent for "Soy Ink Based Art Media." [1] A second count in Brower's complaint is a claim for misappropriation of trade secrets and confidential information in violation of the Uniform Trade Secrets Act as enacted by Iowa, Iowa Code § 550.1 *et seq.* Jurisdiction over the complaint is founded on 28 U.S.C. § 1338(a) pertaining to patent actions. Venue is asserted under 28 U.S.C. § 1400(b), which also pertains specifically to patent actions.

The parties agree that Brower initiated contact with Flint in late 1989 to explore commercialization of her "Soy Ink Art Media." Brower and her attorney travelled to Michigan on January 7 or 8 to meet with officers of Flint. The parties eventually entered into a "Confidential Disclosure Agreement" in January of 1990 to allow Flint to evaluate the commercial utility of Brower's product. The agreement was drafted by one of Brower's attorneys, and revised by her patent attorney. Brower sent to Flint a signed copy of the agreement for execution by Flint officials in Michigan. After evaluating Brower's product, Flint concluded that it

would be unable to develop Brower's product into a practical ink formulation.

In the mean time, Brower became aware that a company named Sinclair & Valentine, which was a company related to Flint Ink, had developed a soy ink formulation known as AGRI–TEK Ink which Brower has characterized as identical to hers except for use of corn oil. Flint asserts that AGRI–TEK Ink was developed before any contact occurred between Brower and Flint. In a letter dated August 30, 1990, Brower's attorney wrote to Flint stating that

> [w]e feel that Sinclair and Valentine, has, in fact, used Sharen's formula or trade secrets disclosed to you with only the slightest adjustment. We would, of course, be compelled to resist any patent infringement by anyone. We simply want you to understand our posture in this matter.

King Affidavit, Exhibit 3. In response, Flint denied that there had been any disclosure of Brower's formulation to anyone, and asserted that the AGRI–TEK Ink was based on formulations well known in the art. Brower made no further complaints about possible infringement until after the issuance of her patent in late 1992. On January 6, 1993, another of Brower's attorneys wrote to Flint indicating that a response to suggested licensing be made within one month. King Affidavit, Exhibit 5. Flint made no response. Brower's attorney wrote to Flint again on August 27, 1993, stating that

> [o]ur own investigation reveals that it is likely that Flint Ink has breached the confidential disclosure agreement and that Flint Ink infringes the [Brower patent].

King Affidavit, Exhibit 6.

Flint asserts that as a result of the accusations of infringement, it filed a declaratory judgment action in the United States District Court for the Eastern District of Michigan (the Michigan action) on September 7, 1993. Count I of Flint's declaratory judgment complaint attacks the validity of Brower's patent. Count II seeks declaratory judgment that

---

1. The patent in question here is United States Patent No. 5,167,704, entitled "Soy Ink Based Art Media." The patent application was filed

April 16, 1991, and the patent was granted December 1, 1992. Complaint, Exhibit 1.

there has been no breach of the confidential disclosure agreement. Before attempts were made to serve Brower with notice of the declaratory judgment action, the parties entered into settlement negotiations. Brower asserts that she had no notice of the Michigan declaratory judgment action until settlement negotiations failed and she was finally served with the complaint on November 12, 1993. On December 3, 1993, Brower moved to dismiss or, in the alternative, to transfer the Michigan action to the Northern District of Iowa, Western Division, in Sioux City, Iowa. On February 7, 1994, nearly three months after she was served with notice of the Michigan action and over two months after moving to transfer the Michigan action to Iowa, Brower filed the present lawsuit.

On February 28, 1994, the court in the Michigan action denied Brower's motion to dismiss or transfer. *Flint Ink Corporation v. Sharen E. Brower,* 845 F.Supp. 404 (E.D.Mich.1994). The Michigan court held that there was an actual controversy warranting declaratory judgment at the time the Michigan action was filed. *Id.* at 5. The court then determined that it had personal jurisdiction over Brower on the basis of her trip to Michigan seeking out a business relationship with Flint and entry into an agreement for evaluation of the commercial possibilities of her product, concluding that Brower had thereby transacted business and created a contract within the Michigan forum. *Id.* at 7–8. The court next concluded that venue is proper in the Michigan forum because it appeared to the court that most of the witnesses required by Flint were Flint employees resident in Michigan and that the witnesses required by Brower would most likely be herself, her counsel, and possibly her expert witness. *Id.* at 9. The Michigan court therefore entered another order on March 15, 1994, scheduling a conference for discovery, mediation, final pretrial order, final pretrial conference, and trial dates.

On March 25, 1994, Flint responded to Brower's Iowa complaint by filing the present motion to dismiss this action for lack of

jurisdiction or, in the alternative, to transfer or stay.[2] Flint argues that it does not have sufficient minimum contacts with this forum for this court to assert personal jurisdiction over it. Flint also argues that venue is improper in Iowa, and that Michigan is the proper forum on the grounds of convenience of the parties and witnesses, and judicial economy. Flint argues that the Michigan action was filed first, and the Michigan court has already determined its jurisdiction over the parties and the propriety of venue in Michigan, and has also asserted control over the process to bring this matter to trial. Flint argues that the Michigan and Iowa actions are entirely duplicative, apart from designation of claims, and arise from identical operative facts. Finally, Flint argues that Brower's trade secrets claim under Iowa law is plainly time-barred because it was not brought within three years of Brower's learning of alleged misappropriation of trade secrets.

Brower argues here that this court may exercise jurisdiction over Flint for several reasons. Brower alleges that Flint does extensive business in this district, has a sales office in Des Moines and three sales employees in Iowa, sells its products here, and solicits business here. Brower specifically alleges that she discovered a barrel of ink labelled "Flint Ink" at a newspaper plant in Carroll, Iowa, and that tests on the composition of this ink revealed that it was nearly identical to her own product. She therefore asserts that sale of the infringing product has occurred in this forum. Brower also asserts that in 1989 Flint Ink mailed her a quart of Cobalt dryer, a compound not at issue in this lawsuit. Brower also asserts that while venue in Michigan in extremely inconvenient for her and her witnesses, Iowa is a more convenient forum. She lists sixteen witnesses on her behalf who reside in Iowa. Brower also argues that the court should look with disfavor upon Flint's "secret" filing of its "preemptive strike" declaratory judgment suit while negotiating a settle-

---

2. Flint also filed a motion on March 31, 1994, seeking a protective order from discovery in this action pending a ruling on the motion to dismiss, stay, or transfer. On July 5, 1994, Chief Magistrate Judge John A. Jarvey entered an order staying all discovery in this case until the court rules on the motion to dismiss except for discovery directed at the jurisdiction of this court.

ment in order to deprive Brower of her chosen forum should litigation become inevitable. Finally, Brower argues that her trade secrets claim is not time barred because prior to obtaining the analysis of the sample of Flint Ink from Carroll, Iowa, in 1993, she had only "suspicions," not "knowledge" of infringement by Flint.

## II. ANALYSIS

### A. The "First–Filed Rule"

■ The court believes that analysis of the "first-filed rule" and applicable policies will determine whether dismissal of this second-filed action in favor of the first-filed Michigan action is appropriate. The Eighth Circuit has recognized this rule:

> The well-established rule is that in cases of concurrent jurisdiction, "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir.1985). This first-filed rule "is not intended to be rigid, mechanical, or inflexible," *Orthmann*, 765 F.2d at 121, but is to be applied in a manner best serving the interests of justice. The prevailing standard is that "in the absence of compelling circumstances," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982), the first-filed rule should apply.

*Northwest Airlines v. American Airlines*, 989 F.2d 1002, 1005 (8th Cir.1993) (quoting *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488–89 (8th Cir.1990));[3] *see also E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969 (3d Cir.1988), *aff'd on other grounds*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir.1982); *West Gulf Maritime Assoc. v. ILA Deep Sea Local 24*, 751 F.2d 721, 730 (5th Cir.1985); *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir.1971); *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 178 (2d Cir.1969). The "first-filed rule" has the benefit of being a

> relatively firm rule that, while providing for the exceptional case, avoids in the main the need for *ad hoc* balancing of innumerable factors on a case-by-case basis [and therefore] is both more predictable for litigants—yielding more speedy, less expensive adjudication—and more easily applied by the courts—preserving scarce judicial resources. These are proper considerations that are consistent with the interests of justice.

*Berisford Capital Corp. v. Central States, Southeast & Southwest Areas Pension Fund*, 677 F.Supp. 220 (S.D.N.Y.1988). Application of the "first-filed rule" is reviewed by the appellate court for abuse of discretion. *Goodyear*, 920 F.2d at 489. The court therefore turns to an examination of what circumstances suffice to overcome the "first-filed rule."

### 1. "Balance Of Convenience"

In some cases considering whether or not to allow a second-filed action to proceed, courts have first considered an analogy to 28 U.S.C. § 1404(a) to identify factors in a "balance of convenience" to the parties before considering other special or compelling circumstances. *See, e.g., United States v. Costello*, 809 F.Supp. 56, 59 (E.D.Wis.1992) (listing "balance of convenience" factors found in § 1404(a) without identifying that statute as the source, and determining that only the court of the second-filed action could provide complete relief because only it had jurisdiction over all of the parties); *Igloo Products Corp. v. Mounties, Inc.*, 735 F.Supp. 214, 216 (S.D.Tex.1990) (formulating the § 1404(a) test as whether the first-filed plaintiff's choice of venue creates "such oppressiveness and vexation to a defendant as to be all out of proportion to plaintiff's convenience" or "considerations affecting the court's own administrative and legal problems," and citing as using the § 1404(a) analogy *Superior Sav. Assoc. v. Bank of Dallas*, 705 F.Supp. 326, 330–31 (N.D.Tex.1989), and *Merle Norman*

---

**3.** *Northwest Airlines* is not otherwise on point with the present case because it examined the power of the court entertaining the first-filed action to enjoin the second-filed action, an issue not relevant here before the court entertaining the second-filed action. *Northwest Airlines*, 989 F.2d at 1005.

*Cosmetics v. Martin,* 705 F.Supp. 296, 298–301 (E.D.La.1988)); *Berisford Capital v. Central States, Southeast & Southwest Areas Pension Fund,* 677 F.Supp. 220, 222 (S.D.N.Y.1988) (§ 1404(a) "balance of convenience" was flat, therefore court considered other special circumstances, but found where, as in that case, "the circumstances do not clearly call for departure from the first-filed rule, that rule should be applied without apology"). This court finds that the Michigan court has already determined, on the basis of § 1404(a), that it is the proper forum in which this action should proceed. Brower argues strenuously that the Michigan court misapprehended the number of Iowa witnesses on her behalf who would be inconvenienced by litigation in the Michigan forum. However, "[i]n any determination of a motion to transfer under § 1404(a), the plaintiff's choice of a proper forum is entitled to great weight, and will not be lightly disturbed, especially where the plaintiff is a resident of the judicial district in which the suit is brought." *Houk v. Kimberly–Clark Corp.,* 613 F.Supp. 923, 927 (W.D.Mo.1985). *See also Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991). Flint is a resident of Michigan, where Flint filed its action, and Brower is a resident of Iowa, where she has filed her action. A transfer shifting the inconvenience from one party to another need not be granted. *Houk,* 613 F.Supp. at 927. Allowing this second-filed action to continue would merely shift the burden of litigating in a "foreign" forum from Brower to Flint, just as a transfer of this Iowa action to Michigan would merely shift the burden of litigating in a "foreign" forum from Flint to Brower; therefore, the court concludes that the "balance of convenience" is flat. Consideration of § 1404(a) factors does not compel a departure from the "first-filed rule" in this case.[4]

### 2. *"Compelling Circumstances"*

In *United States Fire Ins. Co. v. Goodyear Tire & Rubber Co.,* 920 F.2d 487, 488–89 (8th Cir.1990), Goodyear's insurers instituted a declaratory judgment action in state court in Minnesota concerning the insurers' obligation to reimburse Goodyear for punitive damages. *Goodyear,* 920 F.2d at 488. Goodyear removed the Minnesota action to federal court and shortly thereafter filed suit in federal court in Georgia seeking a resolution of the punitive damages issue and other coverage disputes. *Id.* The Eighth Circuit Court of Appeals concluded that the district court had not abused its discretion when it determined that the following circumstances were "less than 'compelling' ":

> While it might be true that Goodyear could be considered the "true plaintiff" in this dispute, and that the insurers' motive in filing this action in Minnesota was to avoid the application of Georgia law, Goodyear did have almost three years notice of the insurers' position on the issue of insurance coverage for punitive damages under Minnesota law. Further, while Goodyear claims that it was misled by the insurers' agreements to negotiate differences in policy interpretations, the record indicates that the correspondence concerning possible negotiations dealt exclusively with another disputed coverage issue, the "allocated expense" issue.

*Id.* at 489. The court distinguished two other decisions in which appellate courts affirmed the discretionary determinations of district courts either to follow or find an exception to the "first-filed rule":

> In *Mission Insurance [Co. v. Puritan Fashions Corp.,* 706 F.2d 599 (5th Cir. 1983),]* the insurer gave the insured an extension of the time within which the insured could sue and stated that it would give the insured a written statement of its position on the coverage issue. *Mission Ins.,* 706 F.2d at 600. Instead, after telling the insured that the insured could postpone filing suit until after receiving the written statement, the insurer filed a declaratory judgment action without ever providing the written statement. *Mission Ins.,* 706 F.2d at 600. *There is no record*

---

4. By so concluding, the court is not denying Flint's motion to transfer pursuant to 28 U.S.C. § 1404(a), because the court has made no determination that it has personal jurisdiction over all of the parties, and therefore cannot properly transfer the action pursuant to that statutory section. *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir.1993) (the court must have personal jurisdiction over the parties in order to transfer the case pursuant to 28 U.S.C. § 1404(a)).

*of such misleading, egregious actions taken by the insurers in this case.*

In *E.E.O.C. [v. University of Pa.,* 850 F.2d 969, 972 (3d Cir.1988), *aff'd on other grounds,* 493 U.S. 182 [110 S.Ct. 577, 107 L.Ed.2d 571] (1990) ], the EEOC issued a subpoena to the University of Pennsylvania, but gave the University a grace period, during which time the EEOC would not seek to enforce the subpoena. *E.E.O.C.,* 850 F.2d at 972–73. Three days before the grace period was to expire, the University filed suit in the District Court for the District of Columbia, challenging the validity of the subpoena. *E.E.O.C.,* 850 F.2d at 973. The EEOC then sought to enforce the subpoena in the Eastern District of Pennsylvania, where the subpoena had been issued. *E.E.O.C.,* 850 F.2d at 973. The District Court in Pennsylvania held that the second-filed suit (the subpoena enforcement) should proceed, rather than defer to the first-filed suit in the D.C. court. *E.E.O.C.,* 850 F.2d at 973–74. *Such a fact pattern does not exist in the case at hand. Here, the second-filed action is not an enforcement of an already-issued subpoena, but is a completely separate suit filed in a different court. It is not a continuance of a legal process already under way.*

*Goodyear,* 920 F.2d at 489 (emphasis added).

The Eighth Circuit Court of Appeals has therefore recognized two specific factual circumstances in which it will find an exception to the "first-filed rule" and allow the second suit to continue: (1) where the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first; and (2) where the second-filed action is a continuation of a legal process already begun in that court even though another action concerning the same issues has been filed in between in another court and is therefore ostensibly the first-filed action. *Id.* Neither circumstance is presented here. There is no suggestion in the record that Flint misled Brower about the possibility that it would commence litigation or suggested that Brower should delay commence-

ment of her own litigation. There is no evidence of any agreement to delay filing of any legal actions in order to pursue settlement. Nor is the present action a continuation or enforcement of legal process already begun in this court. Brower's suit is an entirely separate, albeit identical, one.

The court in *Goodyear* also accepted that a party might properly seek the advantages of litigating in a particular forum (in the *Goodyear* case the advantage sought was the application of Minnesota law) by filing a declaratory action in that forum if the opposing party had adequate notice of the party's position. *Id.* In the present case, the advantage Flint has gained is on the issue of convenience of the parties, which this court finds is far less compelling than the issue of applicable law might be. The record also reveals from letters exchanged by counsel for the parties that Brower had as much as three years notice of Flint's position that it was not infringing Brower's patent and had not breached any confidentiality agreement.

Another case in which the court concluded that there was a lack of compelling circumstances to except the case from the "first-filed rule" is *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu,* 675 F.2d 1169 (11th Cir.1982). In *Haydu,* the court held that there were no compelling circumstances requiring the second-filed federal suit to continue in preference to the first-filed state suit even though the state court had denied arbitration, but the federal court had compelled it. *Haydu,* 675 F.2d at 1171. The court concluded that overwhelming comity concerns required that the federal action be dismissed in favor of the state action. *Id.* at 1172. The court found that the state court had moved promptly to dispose of the matter following resolution of disputes concerning arbitration and there were therefore no compelling circumstances requiring the second-filed federal action to continue. *Id.* at 1174. In the present case, the Michigan court has already resolved disputes over jurisdiction and venue in favor of retaining the action and has moved apace to commence discovery and bring the case to trial. There is therefore no undue delay in the first-filed action that

might serve as a compelling circumstance for this court to maintain the second-filed action.

Relatively few other cases have considered what circumstances are sufficiently compelling to overcome the "first-filed rule." In *Berisford Capital v. Central States, Southeast & Southwest Areas Pension Fund*, 677 F.Supp. 220 (S.D.N.Y.1988), the court rejected the suggestion that jurisdictional uncertainties standing alone should be so compelling as to cause the court to depart from the "first-filed rule." *Berisford Capital*, 677 F.Supp. at 225. The court acknowledged that another court had held that a jurisdictional consideration was one of many facts that, when "taken as a whole," had influenced the other court in favor of the second forum. *Id.* (citing *Columbia Pictures Indus. v. Schneider*, 435 F.Supp. 742, 747–51 (S.D.N.Y. 1977)). The court also identified other factors in the compelling circumstances analysis when it wrote that

> [a]dmittedly this is not a case where the facts call for application of the first-filed rule without hesitation. For example, this is not a situation where the court handling the first action has already decided preliminary issues in the case or invested considerable time in familiarizing itself with the cases's [sic] merits. Nor is this a situation where the second action was brought solely to vex the plaintiff in the first suit.

*Id.* Having rejected arguments that either a "balance of convenience" or jurisdictional consideration required an exception, the court therefore followed the "first-filed rule." *Id.* at 226. In the present case, the court finds that the Michigan court has already decided preliminary issues and invested considerable time in familiarizing itself with the merits of the case.

In considering whether the *second* action was brought to vex the plaintiff in the *first* suit, the court in *Berisford Capital* also noted that because of a delay by the process server, the second action was filed in ignorance of the filing of the first. *Id.* at 225 n. 2. Although the second-filers were critical of counsel for the first-filers for failing to notify them of the filing of suit, the court remarked, "I can understand counsel's bruised feelings, but no equitable considerations arise. Coun-

sel for both sides were playing hardball; but neither threw bean balls." *Id.*

While the court in *Berisford Capital* considered the intent of the second filing, a number of courts have looked at the intent, timing, and nature of the first-filed suit. In *Igloo Products Corp. v. Mounties, Inc.*, 735 F.Supp. 214 (S.D.Tex.1990), the court noted that courts have declined to apply the first-filed rule where there were indications that the first-filed suit was initiated in anticipation of the subsequent suit. *Igloo Products*, 735 F.Supp. at 217 (citing *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661 (5th Cir. 1967), *cert. denied*, 389 U.S. 1039, 88 S.Ct. 776, 19 L.Ed.2d 828 (1968), and *Merle Norman Cosmetics v. Martin*, 705 F.Supp. 296, 299 (E.D.La.1988)). However, in that case, the court concluded that when the first-filing plaintiff had mailed a draft copy of its complaint to the defendant weeks before the defendant filed its own complaint, the defendant was at minimum aware of the first-filing plaintiff's intention to file suit, so that the first-filed complaint was not merely anticipatory. *Id.* The court therefore held that it should transfer its second-filed action to the court entertaining the first-filed action. *Id.* at 218. Because there was some question as to the precise similarity of the claims in the two actions, the court chose not to dismiss the second-filed action outright so that the transferee court could determine how the two cases might best be consolidated. *Id.*

In *909 Corp. v. Bolingbrook Police Pension Fund*, 741 F.Supp. 1290 (S.D.Tex.1990), the court found compelling circumstances to overcome the "first-filed rule" where the first-filed action was for declaratory relief. *909 Corp.*, 741 F.Supp. at 1292. The court noted that because declaratory relief is a matter within the court's discretion, courts have held that a declaratory claim should be dismissed if it was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction. *Id.* (citing *Mission Ins.*, 706 F.2d at 602; *Amerada Petroleum Corp.*, 381 F.2d at 663; *E.F. Hutton & Co. v. Cook*, 292 F.Supp. 409, 410 (S.D.Tex.1968)). The court's rationale was that the court cannot allow a party to secure a more favorable forum by filing an action for

declaratory judgment when it has notice that the other party intends to file suit involving the same issues in a different forum. *Id.* In the *909 Corporation* case, the court found that the second-filer had notified the party filing the first, declaratory judgment action of its intent to pursue available remedies if the opposing party took no appropriate action to resolve the dispute. *Id.* at 1293. The court reasoned that

> although it knew of the [opposing party's] potential claim and attempt to seek an out-of-court settlement, [the first-filer] nevertheless filed suit.... Application of the first-filed rule could penalize the [opposing party] for its attempt to make a good faith effort to settle out of court....
>
> Anticipatory suits deprive a potential plaintiff of his choice of forum. The Court should not allow this type of forum shopping in the form of anticipatory, declaratory judgment suits. "The wholesome purposes of [the] declaratory act[ ] would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum." *New Orleans Public Serv. Inc. v. Majoue,* 802 F.2d 166, 168 (5th Cir.1986) (quoting *H.J. Heinz Co. v. Owens,* 189 F.2d 505, 508 (9th Cir.1951)).

*Id.* at 1293. The court, which was entertaining the first-filed declaratory judgment action, dismissed the action before it in deference to the second-filed action. *Id. See also Johnson Bros. Corp. v. Int'l Brotherhood of Painters,* 861 F.Supp. 28, 29 (M.D.La.1994) ("'Compelling circumstances' exist when a declaratory action is filed in anticipation of another lawsuit in order to secure a more favorable forum;" citing *909 Corp.* and *Stack* ); *Stack v. Whitney Nat'l Bank,* 789 F.Supp. 753 (S.D.Miss.1991), *aff'd,* 958 F.2d 1078 (5th Cir.1992) (Table) (suit purely in anticipation of another is subject to dismissal under the compelling circumstances test, citing *909 Corp.*). In *United States v. Costello,* 809 F.Supp. 56 (E.D.Wis.1992), the court found that the Seventh Circuit Court of Appeals had never followed a rigid first-filed

rule in "race to the courthouse" cases in which "a party has intentionally filed a preemptive declaratory judgment action as a means to secure a favorable forum." *Costello,* 809 F.Supp. at 58 (citing *Tempco Electric Heater Corp. v. Omega Engineering,* 819 F.2d 746, 750 (7th Cir.1987)).[5] However, the court was actually confronted with a case where neither action was for declaratory relief, and so it determined that it should find an exception to the first-filed rule on the basis of a balance of convenience. *Id.* at 58–59.

In the present case, Brower argues that her second-filed suit should be allowed to continue in preference to Flint's first-filed declaratory action. Brower characterizes Flint's suit as a "preemptive strike" to obtain the benefits of litigating in its chosen forum. Brower has also complained that Flint filed its declaratory judgment action in "secret," waiting until settlement negotiations broke down to serve her. The court does not believe that either of these circumstances are "compelling" enough to create an exception to the "first-filed rule" here.

The court specifically disagrees with the notion that a first-filed declaratory judgment action is necessarily a "preemptive strike" or anticipatory suit brought for improper purposes such that the court could always find compelling circumstances to supersede such an action if a substantive suit is subsequently filed. Declaratory judgments "are by nature 'anticipatory,' and ... there is a natural desire by all parties to select a preferred forum and gain the initiative of being a plaintiff." *Viacom Int'l Inc. v. Melvin Simon Productions, Inc.,* 774 F.Supp. 858, 867 (S.D.N.Y. 1991). Courts have sustained first-filed declaratory judgment actions that preempted litigation by the other side. *Goodyear,* 920 F.2d at 489; *Carter–Wallace, Inc. v. Ever-Dry Corp.,* 290 F.Supp. 735, 740 (S.D.N.Y. 1968), *Turbo Machine Co. v. Proctor & Schwartz, Inc.,* 204 F.Supp. 39, 41–42 (E.D.Pa.1962). The Eighth Circuit Court of

---

**5.** The court in *Tempco Electric* cited cases in which the "race to the courthouse" had been won by a matter of days by the filer of the declaratory judgment action. *Tempco Electric,* 819 F.2d at 750 (citing *American Griener Elec-tronic, Inc. v. Establissements Henry–Le Puate, S.A.,* 174 F.Supp. 918 (D.D.C.1959) (5 days), and *Technical Tape Corp. v. Minnesota Mining & Mfg. Co.,* 135 F.Supp. 505 (S.D.N.Y.1955) (fifteen days)).

Appeals has recognized that a party might properly seek the advantages of litigating in a particular forum by filing a declaratory action in that forum if the opposing party had adequate notice of the party's position. *Goodyear,* 920 F.2d at 489.

In any event, the court reads those cases allowing a second-filed suit to prevail over a first-filed declaratory action to be based on the rule, not that declaratory actions are disfavored, but that actions brought purely in anticipation of another action are disfavored. *See, e.g., Johnson Bros. Corp. v. Int'l Brotherhood of Painters,* 861 F.Supp. at 29 (M.D.La.1994) ("'Compelling circumstances' exist when a declaratory action is filed *in anticipation* of another lawsuit in order to secure a more favorable forum;" emphasis added); *909 Corp.,* 741 F.Supp. at 1292 (stating rule as declaratory claim should be dismissed if it was filed *for the purpose of anticipating* a trial of the same issues in a court of coordinate jurisdiction); *Stack v. Whitney Nat'l Bank,* 789 F.Supp. 753 (S.D.Miss.1991), *aff'd,* 958 F.2d 1078 (5th Cir. 1992) (Table) (suit "purely in anticipation" disfavored).

In the present case, both parties had every reason to believe that it might be necessary to resort to the courts for a resolution of the dispute. Brower had been making claims of infringement and violation of a confidentiality agreement for over three years. In such circumstances, the court does not believe that a party accused of patent infringement must wait indefinitely until the accuser decides to litigate the issue to clear itself of the accusation. Rather, as the Michigan court entertaining the first-filed action here found, a declaratory judgment action in this patent infringement action was proper because Flint had been expressly charged with infringement by Brower. *Flint Ink Corporation v. Sharen E. Brower,* 845 F.Supp. 404 (E.D.Mich.1994) (citing the test stated in *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988)). Furthermore, this court believes that Flint had legitimate reasons for seeking to litigate in the Michigan forum based on the convenience of Flint and Flint's employee witnesses.

The court does not find that this was a "race to the courthouse" situation in which only a "preemptive strike" or procedural maneuvering provided Flint with the advantageous forum. Brower waited nearly three months after being served with Flint's declaratory suit and almost two months after moving to dismiss or transfer that case to this forum before filing her own lawsuit. Although Brower had been threatening actions to enforce her rights for over three years, it does not appear to the court that Flint had any reason to believe that only by swift action would it beat Brower to the courthouse.

Brower's complaint that Flint waited a little over two months from the filing of its suit until Brower was served with notice of the action does not impress the court as "compelling circumstances" to prefer the present action over the first-filed one. *Fed.R.Civ.P.* 4(m) provides the plaintiff with 120 days within which to serve the complaint. Although Flint had opportunities to serve Brower earlier, Flint allowed half of the allotted time to slip away without taking any action to preempt a suit by Brower or terminate negotiations in favor of litigation. The court believes that the record of hesitation or temporizing by both parties in filing suit and the significant delay on Brower's part after receiving notice of the first-filed declaratory action before filing her own suit reveal a "dawdle" not a "race" to the courthouse. Brower was not narrowly "beaten to the punch" only by procedural maneuvering on Flint's part.

The court is not suggesting that Flint was not playing hardball by filing its suit and thereby attempting to secure a favorable forum should events indicate litigation was inevitable. However, the court does not find such conduct to be egregious or to provide compelling circumstances to overcome the "first-filed rule." Rather, the court believes that Flint's counsel had a legitimate interest in the convenience of Flint and its employees for seeking litigation in the local forum. Its actions were specifically provided for in the Federal Rules of Civil Procedure and its decision to seek a declaratory judgment was appropriate under the test for patent cases in

light of Brower's repeated accusations of infringement. Brower had also played hardball by making direct accusations of infringement and breach of confidentiality and by threatening enforcement of patent rights. Like the court in *Berisford Capital,* where the second-filers were critical of the first-filers for not notifying them that suit had been filed, "I can understand counsel's bruised feelings, but no equitable considerations arise. Counsel for both sides were playing hardball; but neither threw bean balls." *Berisford Capital,* 677 F.Supp. at 225 n. 2.

Finally, the court concludes that judicial economy will be served by preferring the Michigan action to the present one. The Michigan court has already decided preliminary issues and invested considerable time in familiarizing itself with the merits of the case. The Michigan court has already determined that it has jurisdiction and that venue in that forum is proper. This court does not believe that either the parties or the judicial system will be well served by another examination of whether a court has personal jurisdiction over one of the parties, this time Flint. The parties and the courts will be best served by moving toward a decision on the merits of this controversy in the forum where the litigation has already advanced beyond these preliminaries. The court concludes that there are no compelling circumstances here on which to base an exception to the "first-filed rule." The court will defer to the first-filed action in Michigan.

#### 3. *Transfer Or Dismiss?*

■ Having determined that it should defer to the Michigan action, the court must consider whether an outright dismissal of this action is appropriate. Flint has asserted that this action is entirely duplicative of the Michigan action apart from denomination of the claims. Although Brower does not appear to contest that characterization of the claims in the two cases, the court does not wish to preclude Brower from asserting proper claims in resolution of this matter. Like the court in *Igloo Products,* the court believes that the wisest course would be to transfer rather than dismiss the action so

that the transferee court can determine the precise similarity of the claims in the two actions and determine how the two cases might best be consolidated. *Igloo Products,* 735 F.Supp. at 217. However, the court must have personal jurisdiction over the parties in order to transfer the case pursuant to 28 U.S.C. § 1404(a), *Pittock v. Otis Elevator Co.,* 8 F.3d 325, 329 (6th Cir.1993), and Flint has challenged both this court's personal jurisdiction over it and venue. The court has made no determination of either jurisdiction or venue. The court finds that 28 U.S.C. § 1406(a) does not have the personal jurisdiction requirement found in § 1404(a), *Id.,* and that transfer statute states that it is intended to cure defects in venue. 28 U.S.C. § 1406(a). A determination that the court should follow the "first-filed rule" in this case is not the same as a determination that venue is defective. Because the defendant in the present action is a corporation, the questions of personal jurisdiction and venue in a patent infringement case must be combined as the result of the interplay of two venue statutes, 28 U.S.C. § 1391(c) and 28 U.S.C. § 1400(b). *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1575 (Fed.Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991). The court has made no determination of personal jurisdiction, and hence, none regarding venue. This court has no authority under either § 1404(a) or § 1406(a) to transfer this action to Michigan. The court will therefore dismiss this action in deference to the first-filed Michigan action.

### III. CONCLUSION

The court concludes that application of the "first-filed rule" is appropriate in the circumstances presented here. The court finds that a "balance of convenience" test, applied by some courts when examining whether circumstances require an exception to the "first-filed rule," does not weigh in favor of one action over the other. Either by proceeding with this action, or by dismissing it in favor of the first-filed action, one of the parties will be inconvenienced. Shifting the inconvenience from one party to another is not a valid reason to depart from the "first-filed rule." The court further concludes that no "compelling circumstances" are presented

here which require an exception to the "first-filed rule." Although both parties were playing hardball, neither acted inequitably in attempting to secure a favorable forum. More importantly, the court believes that the record here does not reveal a "race to the courthouse" or a "preemptive strike" to secure a favorable forum, but instead hesitation and temporizing by both parties leading to the filing of two suits some months apart. The court specifically rejects the suggestion that merely because the first-filed action was for declaratory judgment, it should be disfavored. Finally, the court concludes that it has no statutory authority to transfer an action over which it has made no determinations of jurisdiction and venue. This second-filed action will therefore be dismissed in favor of the first-filed Michigan action.

**IT IS SO ORDERED.**